BUTTE MINERS' UNION, Appellant, v. CITY OF BUTTE, Respondent.

(No. 4,424.)

(Submitted September 14, 1920.   Decided October 18, 1920.)

[194 Pac. 149.]

*Cities and Towns—Riots—Liability for Damages—Purpose of Statute—Right to Bear Arms—Constitution—Instructions.*

Government—Primary Purpose.
  1.   The primary purpose of government is maintenance of peace and social order.

Cities and Towns—Riots—Statutory Liability—Purpose of Statute.
  2.   The purpose of section 3485, Revised Codes, making cities and towns responsible for injuries to real or personal property within their corporate limits, caused by mobs or riots, is not only to create municipal liability, but to instill in the minds of taxpayers a will to discourage violence and to stimulate effort to preserve public safety.

Same—Riots—Damages—Absolute Liability—Exception.
  3.   *Held,* under section 3485, Revised Codes, that the liability of a city for damages to property through riots or mobs is absolute, save where the plaintiff owner by his own unlawful conduct induced the injury for which he seeks damages, in which event he cannot recover, since no one can take advantage of his own wrong.
    [What constitutes mob or riot for which municipality is liable, see notes in 11 Ann. Cas.  185; 18 Ann. Cas. 151.
    [Liability of municipality for damage caused by mob as dependent on notice to authorities, see notes in 8 Ann. Cas. 465; Ann. Cas. 1916A, 326.]   .

Same—Riots—Storing Arms in Building Destroyed—Defenses.
  4.   The bare fact that plaintiff labor union had stored arms and ammunition in its building to protect its property and the lives of its members there assembled was not alone sufficient to defeat its right to recover damages under section 3485, Revised Codes, since under the provisions of the state Constitution, the right to protect    . property and to bear arms in defense of person and property is guaranteed (Art. III, secs. 3, 13).

Same—Riots—Instructions.
  5.   In an action against a city for damages to its property during a riot, in which the defenses alleged were that, though knowing of the danger incident to holding a parade on a certain day, it nevertheless did hold it and failed to advise defendant of its fears in that regard, and that plaintiff had caused firearms and ammunition to be stored in its building and that but for the fact that a shot was fired therefrom, which enraged the mob, the injury complained of would not have resulted, an instruction that if plaintiff by "want of ordinary care" or by its own "voluntary acts" contributed to the injury, it could not recover, *held* erroneous as inapplicable under the issues, and because faulty for failure to define the terms "want of ordinary care" and "voluntary acts."

*Appeal from District Court, Powell County; Geo. B. Winston, Judge.*

ACTION by the Butte Miners' Union against the City of Butte. From a judgment for defendant and from an order denying it a new trial, plaintiff appeals. Reversed and remanded.

*Mr. Peter Breen, Mr. T. F. Shea* and *Mr. A. C. McDaniel,* for appellant, submitted a brief; *Mr. Breen* argued the cause orally.

The states of New York and Pennsylvania have sections founded on the same principle as our section 3485. The court of appeals of New York in the case of *Darlington* v. *Mayor etc. of City of New York,* 31 N. Y. 164, 88 Am. Dec. 248, has given a very concise statement of the reasons for the enactment of such a statute. It shows the necessity of the state making cities and towns liable for injuries caused by mobs. (*County of Allegheny* v. *Gibson,* 90 Pa. St. 397, 35 Am. Rep. 670.)

The state of Kansas has a similar law, which reads: "All incorporated cities and towns shall be liable for all damages that may accrue in consequence of the acts of mobs within their corporate limits, whether such damages shall be loss of property or injury to life or limb."

In the case of the *City of Iola* v. *Birnbaum,* 71 Kan. 600, 6 Ann. Cas. 267, 81 Pac. 198, the city argued that it had no notice of the existence of the mob and no opportunity to control it. Under the statute quoted, the court held that no notice was required and that the defense was not available to the city. (See, also, *Blakeman* v. *City of Wichita,* 93 Kan. 444, Ann. Cas. 1916D, 188, L. R. A. 1915C, 578, 144 Pac. 816; *City of Cherryvale* v. *Hawman,* 80 Kan. 170, 133 Am. St. Rep. 195, 18 Ann. Cas. 149, 23 L. R. A. (n. s.) 645, 101 Pac. 994; *City of Madisonville* v. *Bishop,* 113 Ky. 106, 57 L. R. A. 130, 67 S. W. 269; *Williams* v. *City of New Orleans,* 23 La. Ann. 507;

*Wolfe* v. *Richmond,* 11 Abb. Pr. (N. Y.) 270, 19 How. Pr. 370; *Mayor etc. of Hagerstown* v. *Dechert,* 32 Md. 369; *Fauvia* v. *City of New Orleans,* 20 La. Ann. 410; *Solomon* v. *City of Kingston,* 24 Hun (N. Y.), 562; *Luke* v. *City of Brooklyn,* 43 Barb. (N. Y.) 54; *Sarles* v. *Mayor etc. of City of New York,* 47 Barb. (N. Y.) 447; *Moody* v. *Board of Supervisors of Niagara County,* 46 Barb. (N. Y.) 659.)

In nearly all of the states which have statutes on the subject there appear in the statute conditions which will excuse the city from liability if the conditions are not met. These conditions are such as notice to the city of the formation of the mob, or that a person's property is liable to be destroyed or injured by a mob, or that if the plaintiff is careless or negligent or does some wrongful act. · None of these conditions appear in the Montana statute, which is final and absolute. It makes no difference for what reason the mob formed, or how it was formed, or whether the plaintiff had anything to do with the formation, or did any act which caused the formation of the mob, or did anything to excite or inflame the mob. No such conditions appear in the Montana statute and none can be grafted thereon by any construction. The defenses which the said city sought to impose in this action in its affirmative defense to the first cause of action, and in its defense to the second cause of action, and by its evidence introduced at the trial, are wholly irrelevant and foreign to the issues in the case. The statute has made no allowance for such defenses or such evidence. It contains no matter of mitigation of damages or of an excuse for not controlling and preventing the acts of the mob. And in all of the states which have statutes with such modifications and conditions, it has been held that the city is liable unless such conditions are proven. The state of Illinois has such a statute. In the *City of Chicago* v. *Manhattan Cement Co.,* 178 Ill. 372, 69 Am. St. Rep. 321, 45 L. R. A. 848, 53 N. E. 68, the court held that the statute making the city or county liable for property destroyed within it by a mob, without reference to its ability to

exercise of diligence to prevent the destruction, is within the police power of the state, and a person who brings himself within the statute is entitled to damages for the destruction of his property. (*Sturges* v. *City of Chicago,* 237 Ill. 46, 86 N. E. 683; *Champaign County* v. *Church,* 62 Ohio St. 318, 78 Am. St. Rep. 718, 48 L. R. A. 738, 57 N. E. 50.)

Assuming that shots were fired from the hall and by members of the plaintiff at the crowd outside on June 23, this fact would be no defense for the city, for not protecting the property of the plaintiff and not controlling the mob. Even if it did, it had that right, as stated by Chief Justice Gibson in the case of *Donoghue* v. *County,* 2 Pa. St. 230, to do so: "It was justifiable to introduce men and arms into the house as the exercise of a freeman's privilege, whether there was an apprehension of danger or not."

It is generally held that to constitute a riot, there must be present an element of concerted action and violence in attacking those who offer resistance to the execution of an unlawful plan or of a large tumultuous gathering against the public peace and order, which carries out this unlawful destruction of property with preparation and deliberation or of unlawful conduct which inspires terror. We submit all of the elements of the mob or riot were present here which are shown in these cases: *City of Cherryvale* v. *Hawman,* 80 Kan. 170, 133 Am. St. Rep. 195, 18 Ann. Cas. 149, 23 L. R. A. (n. s.) 645, 101 Pac. 994; *Champaign County* v. *Church,* 62 Ohio St. 318, 78 Am. St. Rep. 718, 48 L. R. A. 738, 57 N. E. 50; *Harvey* v. *City of Bonner Springs,* 102 Kan. 9, L. R. A. 1918C, 231, 169 Pac. 563.

It is no defense to an action brought under a statute making the city liable for the acts of the mob to show that the city was unable to prevent the injury. It was said in the case of *Allegheny County* v. *Gibson, supra,* that the courts will not allow a great city to stand idly by while a mob destroys property. Under the statute, section 8959, Revised Codes, the city and its officers has the power to summon to their aid all

of the people in the city or county to prevent the destruction by the mob; they have the right to command assistance; they do not have to ask for it, and this is the holding in the following cases: *City of Iola* v. *Birnbaum,* 71 Kan. 600, 6 Ann. Cas. 267, 81 Pac. 198; *Blakeman* v. *City of Wichita,* 93 Kan. 444, Ann. Cas. 1916D, 188, L. R. A. 1915C, 578, 144 Pac. 816; *City of Chicago* v. *Pennsylvania Co.,* 119 Fed. 497, 57 C. C. A. 509; 19 R. C. L., p. 1103, sec. 388.

The city claims that the mob of June 23, 1914, was lawfully assembled, and that it afterward, because of acts of the plaintiff, became riotous, and that the city should not be held liable for any of the acts of the mob because of the alleged acts of the plaintiff. It is no defense that a number of persons lawfully assembled, and that afterward they formed an unlawful purpose and carried it into execution. (*Harvey* v. *City of Bonner Springs,* 102 Kan. 9, L. R. A. 1918C, 231, 169 Pac. 563; *Blakeman* v. *City of Wichita,* 93 Kan. 444, Ann. Cas. 1916D, 188, L. R. A. 1915C, 578, 144 Pac. 816; *City of Madisonville* v. *Bishop,* 113 Ky. 106, 57 L. R. A. 130, 67 S. W. 269.)

*Mr. S. P. Wilson, Mr. R. L. Clinton* and *Mr. E. D. Elderkin,* for Respondent, submitted a brief; *Mr. Wilson* and *Mr. Clinton* argued the cause orally.

Appellant contends in its brief that the liability imposed by statute is an absolute one, and that upon proof of the existence of the mob and riot, and the injury to its property, appellant was entitled to recover without regard to its own participation in the cause of the injury. The proposition advanced by appellant is startling in the extreme, and it is not surprising that no authority is cited in the brief or referred to in the books sustaining its position in this record.

The universal holding of the courts since we have history of recorded decisions is contrary to the position taken by appellant in this case. It is true that under the statutes enacted in some of the states there is express provision that the in-

jured party cannot recover if the injury was caused by any wrongful or unlawful act on his part. Our own statute does not contain any such express provision, but the rules of law are so firmly settled that no person can recover for. damages arising out of or proximately caused by his own voluntary act, that it applies in a case such as this just as forcefully as if written in express words into the statute. (1 Thompson's Commentaries on Negligence, sec. 185; *Smith* v. *Centennial Eureka Min. Co.*, 27 Utah, 307, 75 Pac. 749; *Broschart* v. *Tuttle*, 59 Conn. 1, 11 L. R. A. 33, 21 Atl. 925; *Young* v. *Chicago, M. & St. P. Ry. Co.*, 100 Iowa, 357, 69 N. W. 682; *Chase* v. *New York Cent. etc. R. Co.*, 208 Mass. 137, 94 N. E. 377; *Mutual Life Ins. Co.* v. *Armstrong*, 117 U. S. 591, 29 L. Ed. 997, 6 Sup. Ct. Rep. 877 [see, also, Rose's U. S. Notes]; *Riggs* v. *Palmer*, 115 N. Y. 506, 12 Am. St. Rep. 819, 5 L. R. A. 340, 22 N. E. 188; *Sweeney* v. *Montana Cent. Ry. Co.*, 25 Mont. 543, 65 Pac. 912; 29 Cyc. 666.) The rule was specifically applied in the following cases, where liability was sought to be imposed because of the actions of the mob: *Eastman* v. *Mayor etc. of City of New York*, 5 Rob. (N. Y.) 389; *Ely* v. *Board of Supervisors of Niagara County*, 36 N. Y. 297; *Chadbourne* v. *Town of New Castle*, 48 N. H. 196; *Palmer* v. *City of Concord*, 48 N. H. 211, 97 Am. Dec. 605; *Underhill* v. *City of Manchester*, 45 N. H. 214; 6 McQuillin on Municipal Corporations, sec. 2650; *Wing Chung* v. *City of Los Angeles*, 47 Cal. 531; *Paladino* v. *Board of Supervisors of Westchester County*, 47 Hun (N. Y.), 337.

The decisions concerning the liability of corporations for acts of those acting in its behalf are innumerable. We refer to a few of the leading decisions which, because of the similarity of facts, are particularly instructive in this connection: *Denver & R. G. Ry. Co.* v. *Harris*, 3 N. M. 109, 2 Pac. 369, affirmed by the supreme court of the United States in 122 U. S. 597, 30 L. Ed. 1146, 7 Sup. Ct. Rep. 1286 [see, also, Rose's U. S. Notes]; *Meek* v. *Smith*, 59 Colo. 461, 149 Pac. 627; *Berry Foundry Co.* v. *International Moulders Union*, 177 Mo.

App. 84, 164 S. W. 245; *Anthony* v. *American Glucose Co.*, 146
N. Y. 407, 41 N. E. 23; *Franklin Union, No. 4*, v. *People*, 220
Ill. 355, 110 Am. St. Rep. 248, 4 L. R. A. (n. s.) 1001, 77
N. E. 176; *Bingham* v. *Lipman*, 40 Or. 363, 67 Pac. 98;
*Grorud* v. *Lossl*, 48 Mont. 274, 280, 136 Pac. 1069; *Johnston
Fife Hat Co.* v. *National Bank of Guthrie*, 4 Okl. 17, 44 Pac.
192; *Telegram Newspaper Co.* v. *Commonwealth*, 172 Mass.
294, 70 Am. St. Rep. 280, 44 L. R. A. 159, 52 N. E. 445;
5 Fletcher's Cyclopedia of Corporations, secs. 3338–3340.

MR. JUSTICE COOPER delivered the opinion of the
court.

This action was commenced in Silver Bow county to re-
cover damages sustained for injuries to property on two dif-
ferent occasions at the hands of mobs assembled in the city
of Butte. It is not disputed that the ownership of the build-
ing known as Miners' Union Hall, and the personal property
contained therein at the time of the injuries, was in the plain-
tiff corporation; nor that the removal and destruction of it
were accomplished by mobs within the city limits.

The complaint consists of two causes of action. The first
alleges, in substance, the assembling of a mob on June 13,
1914, the attack upon plaintiff's property with clubs, bricks
and bottles; the beating up of persons upon the streets, and
the carrying away and destruction of personal property of
the value of $30,000. In the second cause of action it is
alleged that on June 23, 1914, plaintiff's building, known as
Miners' Union Hall, was attacked by a mob, torn down and
destroyed, to its damage in the sum of $63,000. The answer
denies all the allegations of both causes of action, and as
against the first cause of action it is affirmatively alleged that
the plaintiff was advised upon several occasions prior to, and
particularly on, June 13, 1914, that if it should attempt to
conduct a parade upon that day, such attempt would cause
a riot and injury and destruction of its property would follow
as a result thereof; that defendant did not know, nor by the

exercise of reasonable diligence could have ascertained, that a mob would gather; that the plaintiff knew of the danger attending the holding of a parade and that it would cause injury to its property, but failed and neglected to advise defendant of its fears in that regard. Against the second cause of action it is alleged that plaintiff through its officers caused firearms, guns and ammunition to be stored in its building; that during a meeting attended by more than a quorum of its members, when one of its members attempted to enter its building for the purpose of participating in the proceedings, men stationed in the building shot and injured such member and also shot into the crowd in front of the building on Main Street, wounding two persons and killing another, thereby causing the crowd to become enraged and to attack and partially destroy the building; that until the shooting commenced no damage had been done, and but for the shooting plaintiff's property would not have been damaged. By replication all of the affirmative allegations of the answer were denied.

The cause was transferred to Powell county, where it was tried to a jury, and a verdict and judgment were rendered and entered in behalf of defendant. A motion for a new trial was made and overruled and appeal taken to this court from the judgment and order so made.

Appellant's position is that its right to recover is not to be denied it merely because it did not notify defendant that it would hold a parade and that damage would result therefrom, but that plaintiff had a right to parade the public streets of the city, to meet in lawful assembly, and to repel attack by such force as might be necessary to preserve the lives of its members and to prevent the destruction of its property.

Respondent's answer to this is that by reason of the holding of the parade, the plaintiff's failure to notify the city of its intention to parade, the storage of guns, ammunition and explosives in the building, and the shooting therefrom into the assemblage of persons on Main Street in front of the build-

ing, the riot occurred and plaintiff's property was removed and damaged.

Thirty-six errors are pressed upon our attention by appellant, but we shall notice only those affecting the turning points in the case, and those questions likely to arise upon another trial.

Primarily, government exists for the maintenance of peace [1, 2] and social order. The purpose of our statute, and those of similar import, is to create municipal liability and tend to instill in the minds of every person liable to contribute to the public expense, a will to discourage violence and to stimulate effort to preserve public safety. This view is upheld by the supreme court of the United States in the case of *City of Chicago* v. *Sturges,* 222 U. S. 313, 323, Ann. Cas. 1913B, 1349, 56 L. Ed. 215, 32 Sup. Ct. Rep. 92 [see, also, Rose's U. S. Notes], where the history and purpose of this character of legislation are reviewed, as follows: "The state is the creator of subordinate municipal governments. It vests in them the police power essential to the preservation of law and order. It imposes upon them the duty of protecting property situated within their limits from the violence of such public breaches of the peace as are mobs and riots. This duty and obligation thus intrusted to the local subordinate government is by this enactment emphasized and enforced by imposing upon the local community absolute liability for property losses resulting from the violence of such public tumults. The policy of imposing liability upon a civil subdivision of government exercising delegated police power is familiar to every student of the common law. We find it recognized in the beginning of the police system of the Anglo-Saxon people. Thus, 'The Hundred,' a very early form of civil subdivision, was held answerable for robberies committed within the division. By a series of statutes, beginning possibly in 1285, in the statutes of Winchester, 13 Edw. I, C. I, coming on down to the 27th Elizabeth, C. 13, the Riot Act of George I (I Geo. I, St. 2), and Act of 8 George II, C. 16, we may find a con-

tinuous recognition of the principle that a civil subdivision intrusted with the duty of protecting property in its midst and with police power to discharge the function may be made answerable not only for negligence affirmatively shown, but absolutely as not having afforded a protection adequate to the obligation. Statutes of a similar character have been enacted by several of the states and held valid exertions of the police power. (*Darlington* v. *Mayor etc. of City of New York*, 31 N. Y. 164, 88 Am. Dec. 248; *Fauvia* v. *City of New Orleans*, 20 La. Ann. 410; *County of Allegheny* v. *Gibson*, 90 Pa. St. 397, 35 Am. Rep. 670.) The imposition of absolute liability upon the community when property is destroyed through the violence of a mob is not, therefore, an unusual police regulation. Neither is it arbitrary, as not resting upon reasonable grounds of policy. Such a regulation has a tendency to deter the lawless, since the sufferer must be compensated by a tax burden which will fall upon all property, including that of the evil-doers of the community. It is likewise calculated to stimulate the exertions of the indifferent and the law-abiding to avoid the falling of a burden which they must share with the lawless. In that it directly operates on and affects public opinion, it tends strongly to the upholding of the empire of the law.''

We are not at liberty to read into a statute like section [3] 3485 of the Revised Codes, language qualifying the right of recovery, but are bound, rather, to assume that had the legislature intended to prescribe the conditions under which it should come into force, it would have particularized in plain and unmistakable words the things intended to prevent recovery under it. Its language is: "Every city or town is responsible for injuries to real or personal property within its corporate limits, done and caused by mobs or riots." Having thus spoken upon the subject, for constitutional reasons familiar to all, it is beyond the scope of judicial power to write exceptions into a law the legislature has not seen fit to place there. (*County of Allegheny* v. *Gibson, supra; Williams* v.

*City of New Orleans,* 23 La. Ann. 507.)   While the statute upon its face is absolute, it may well be that cases might arise in which the courts would be impelled to deny a suitor its benefits.   For instance: It is one of the legal maxims of the jurisprudence of this state that no one can take advantage of his own wrong (Rev. Codes, sec. 6185).   In the present [4]  case, however, nothing short of the commission of an overt act by some agency authorized or abetted by the plaintiff itself to which the damage can be clearly attributed would relieve the city of responsibility under the statute, for along with the right the statute accords are the guaranties of the Constitution that the right of enjoying and defending life, of acquiring, possessing and protecting property, and of seeking and obtaining safety and happiness in all lawful ways (Const. of Montana, Art. III, sec. 3), and the right to bear arms in defense of home, person and property shall not be called in question (*Id.,* Art. III, sec. 13).   In the light of this reasoning, it was the duty of the district court to inform the jury that if the evidence disclosed that, annually, on June 13 (known as Miners' Union Day), it had been the custom of the plaintiff to hold a parade in the public streets of the city of Butte, that of itself would constitute sufficient notice to the city; and that plaintiff's right to recover for the destruction of its property could not in any event be affected by its failure to advise the city of its intention to parade, as it was wont to do.   It was likewise its duty to state fully to the jury the principle of the statutes applicable to the evidence, and to instruct them that the city would be liable for the damage done to plaintiff's property through mobs or riots, unless, from a preponderance of all the evidence in the case, it appeared that the plaintiff, by its own wrongful conduct, induced the injury for which damages were sought.

At the close of all the testimony, and without objection on the part of plaintiff, the court instructed the jury, in effect, that the defendant city was liable for injuries to the property of the plaintiff, done or caused by mobs or riots,

regardless of its ability or inability to prevent it; that the plaintiff had a lawful right to hold a peaceable parade in accordance with its custom; that in so doing neither plaintiff nor its members were in any manner violating any law of this state or of the United States, nor doing anything that would justify persons or a mob in destroying the property of plaintiff; that before such a defense could be considered the jury must find that said parade was organized for an unlawful purpose, and that such parade was the proximate cause of the riotous and destructive acts of the mob on the thirteenth day of June; that if the jury found that the members of the plaintiff corporation were peaceably assembled on the evening of June 23, 1914, and were gathered in plaintiff's building in attendance upon a meeting being held therein, and that such members did carry and bear firearms within said building at the time of said meeting, such facts alone would not be a defense in this action, unless they further found that such firearms were present in the building for unlawful purposes.

Objection was made by the plaintiff to the giving of instruction No. 9, in which the jury were told that plaintiff [5] could not recover, "notwithstanding the fact that there had been a neglected duty on the part of the defendant city, or its officers, with reference to the mobs or rioting on the 13th of June, 1914, whereby plaintiff's property was damaged or injured, if the plaintiff, by want of ordinary care, or by its own voluntary acts so far contributed to the injury that, had it not been for its acts and want of ordinary care, the injury would not have happened." The phrase "want of ordinary care" used in the instruction injected into the case an issue which neither the pleadings nor the nature of the action justified. Neither did the court advise the jury what acts or omissions of the plaintiff constituted the "voluntary acts" contributing to the destruction of plaintiff's property. Who can say, therefore, that the verdict of the jury, so far as it responds to the issue raised by the affirmative defense to the first cause of action, does not rest upon the alleged

failure on the part of the plaintiff to give notice to the city authorities that it intended to conduct its usual annual parade, and that it had reason to apprehend that damage might be inflicted upon its property if it carried out its purpose so to do? Or who can say that the jury did not, upon the issue created by the defense interposed to the second cause of action, base its verdict upon the presumption that the plaintiff caused firearms, ammunition and explosives to be stored in and about its meeting place, for purposes other than that of preserving the lives of its members and the protection of its property; or that the jury reached the verdict it did under the impression that the weapons plaintiff had caused to be stored in its building were recklessly, without provocation and unlawfully pointed at and discharged into an orderly assemblage of persons in front of its building, and constituted in the minds of the jury the "voluntary acts" or "want of ordinary care" referred to in the instruction.

Upon the whole record before us, it is apparent that the district court adopted and applied principles of law opposed to those above announced, and submitted the case to the jury upon the erroneous theory that the plaintiff merely by the storage of arms in the building provoked the attack and brought upon itself the injury complained of. For these reasons the judgment and order are reversed and the cause is remanded to the district court for a new trial in conformity with the views herein expressed.

*Reversed and remanded.*

MR. CHIEF JUSTICE BRANTLY and ASSOCIATE JUSTICES HOLLOWAY and HURLY concur.

Rehearing denied December 13, 1921.