WILLIAM MANZO *ET ALS.*, PLAINTIFFS, v. CITY OF PLAIN-
FIELD, A MUNICIPAL CORPORATION OF THE STATE
OF NEW JERSEY, DEFENDANT.

Superior Court of New Jersey
Law Division

October 22, 1969.

Mr. *John D. Methfessel* appeared for plaintiffs (*Mr. S. A. Gennet,* attorney).

Mr. *Robert T. Hueston* appeared for defendant (*Messrs. Hueston & Hueston,* attorneys).

FELLER, J. S. C. This is a motion by defendant City of Plainfield in the consolidated cases to declare unconstitutional certain laws known as the riot statutes, for the reason that they violate the due process clause of the 14th Amendment of the United States Constitution. These statutes are *N. J. S. A.* 2A:48–1 to 7, inclusive. Thus, the question here is the constitutional sufficiency of these statutes.

*N. J. S. A.* 2A:48–1 provides as follows:

When, by reason of a mob or riot, any property, real or personal, is destroyed or injured, the municipality if it has a paid police force, in which the mob congregates or riot occurs, or, if not in such a municipality, the county in which such property is or was situate, shall be liable to the person whose property was so destroyed or injured for the damages sustained thereby, recoverable in an action by or in behalf of such person.

This provision imposes strict liability on the part of a municipality for property damage caused by a riot if the municipality has a paid police force.

At common law a municipality was not liable for damages resulting from mob violence or riots. However, the Legislature has the power to impose liability for riot damage

upon municipalities, and such legislation has been held to be valid and constitutional. See *Darlington v. Mayor, etc., of New York*, 31 *N. Y.* 164 (Ct. App. 1865) ; *City of Chicago v. Sturges*, 222 *U. S.* 313, 32 *S. Ct.* 92, 56 *L. Ed.* 215 (1915) ; *Clark Thread Co. v. Freeholders of Hudson County*, 54 *N. J. L.* 265 (*Sup. Ct.* 1892). In *A & B Auto Stores of Jones Street, Inc. v. Newark*, 103 *N. J. Super.* 559 (*Law Div.* 1968), the court said :

The statute in question created a new cause of action imposing strict liability upon a municipality for property damage caused by riots. Such a cause of action required legislative pronouncement because it eliminated in the field of municipal riot damage liability in the negligence concept and the defense of governmental immunity. It represented a declaration of policy by the Legislature in this limited area in order to make the entire community responsible for the damage to innocent property owners resulting from a breakdown in law enforcement. [at 569]

And further :

Under the riot statute, however, the city in effect is a wrongdoer. The Legislature has designated it as such for failure to enforce the laws and control its inhabitants. Even though its wrongdoing is passive and the damage is directly caused by an active wrongdoer, nevertheless its liability is founded upon a legislative declaration motivated by the municipality's failure to protect property in its confines [at 571]

The legislative policy in enacting these statutes has been clearly set out in the above opinion.

As was stated by Judge Larner in *A & B Auto Stores*, at 579, the statutory liability of municipalities for riot damage had its genesis in England in 1285 when the Statutes of Winchester provided a remedy to the victim against one or more inhabitants of the "hundred," a division of a county in early England, for damage caused by robbery. *Statute of Winchester*, 13 *Edw. I, Stat. 2, c. 2* (1285), reenacted by 28 *Edw. III, c. 2* (1354). A subsequent statute provided for the assessment of damages against all the in-

habitants of the hundred after a recovery against one or more. *27 Eliz., c.* 13 (1585). In 1714 the Riot Act of George I provided that in the event of destruction of a church or dwelling house by an unlawful mob, the inhabitants of the hundred were liable for the value. 1 *Geo. I, c.* 5 (1714). Thereafter, all laws on the subject in England were embodied in the Riot Damages Act of 1886, 49 & 50 *Vict., c.* 38 (1886), *section* 2 of which imposes absolute liability upon English police districts where a house, shop or building has been stolen or destroyed or where property therein has been injured, stolen, or destroyed. See Johnson, "The Insurer and Civil Disorders," 35 *Insur. Counsel J.* 417 (1968); *Wells Fargo & Co. v. Mayor, etc., of Jersey City,* 207 *F.* 871 (*D. N. J.* 1913), aff'd 219 *F.* 699, 700 (3 *Cir.* 1915), *cert.* den. 239 *U. S.* 650, 36 *S. Ct.* 284, 60 *L. Ed.* 485 (1916).

There are approximately 22 states, including New Jersey, which have legislation imposing liability upon municipalities for loss or damage to property caused by riots. New Jersey first enacted legislation, effective 1864, to compensate persons whose property was damaged or destroyed in consequence of mobs or riots. These statutes were incorporated in the *Revised Statutes* of 1877. Thereafter the substance of the act was incorporated in the *New Jersey Revised Statutes* in 1937. When the new Constitution went into effect on January 1, 1948, these statutes continued in effect by virtue of *Art.* XI, § 1, *par.* 3, which provides that all law, statutory or otherwise, in force at the time that Constitution or any Article thereof takes effect shall remain in full force until they expire or are superseded, altered or repealed by the State Constitution or otherwise.

These statutes did not expire, nor were they superseded, altered or repealed, and are in full force and effect and known as *N. J. S. A.* 2A:48-1 to 7, inclusive.

Defendant contends, in effect, that these statutes violate the due process clause of the 14th Amendment of the Federal Constitution which provides that no State shall

deprive a person of life, liberty or property without due process of law. In support of this argument, defendant states that it was a physical impossibility for the members of the Plainfield Police Department to put down the action that was taking place, and for the Legislature to suggest that the city is a wrongdoer during a riot is a legislative fiat not sustainable in any court of law. Defendant cites the case of *Reingold v. Harper*, 6 *N. J.* 182 (1951), in which the court stated that considering the end in view, the statute (*N. J. S. A.* 34:3A–1 *et seq.*) passes the bounds of reason and assumes the character of a merely arbitrary fiat. In effect, defendant contends that the statutes in question deny to it due process of law, since they impose liability irrespective of the power of the municipality to have prevented the riots.

It must be noted, however, that *N. J. S. A.* 2A:48–1 to 7, inclusive, impose strict liability upon defendant. They do not impose absolute liability, that is, liability that is complete and unconditional. *N. J. S. A.* 2A:48–3 provides for certain defenses that are available to the municipality in suits for damages due to riots. This statute, in effect, states that no recovery shall be had if it appears at the trial for damages that the damage or destruction of property was occasioned or in any manner aided, sanctioned or permitted by the negligence of the claimant. It also provides that there shall be no recovery unless the claimant used all reasonable diligence to prevent the destruction or damage, or upon being apprized of a threat to damage or destroy his property by a mob or riot, he notified the proper authorities of the threat.

Furthermore, *N. J. S. A.* 2A:48–7 provides:

A municipality or county, having paid damages for the destruction of or injury to property under this article, either upon a judgment therefor or as a settlement, may recover the full value of the property destroyed or injured by action against any or all persons engaged or in any manner participating in the mob or riot and the amount of judgment or settlement shall be prima facie evidence of the value of the property destroyed or injured.

The act also saves to the claimant his action against the rioters. *N. J. S. A.* 2A:48–5 states:

> Nothing in this article shall be construed to prevent a person whose property has been destroyed or injured by a mob or riot from maintaining an action against each and every person engaged or in any manner participating in the mob or riot.

A similar riot statute in Illinois has been upheld and declared constitutional. In *Chicago v. Sturges, supra,* the United States Supreme Court affirmed a judgment against the City of Chicago for damages caused by riots and upheld the constitutionality of an Illinois Riot Act entitled, "An Act to Indemnify the Owner of Property for Damages by Mobs and Riots." In *Sturges* the court stated that it is a general principle of our law that there is no individual liability for an act which ordinary care and foresight could not guard against. It is also a general principle that a loss from any cause purely accidental must rest where it chances to fall. The court further stated that behind and above these general principles which the law recognizes as ordinarily prevailing, there lies the legislative power which, in the absence of organic restraint, may, for the general welfare of society, impose obligations and responsibilities otherwise nonexistent.

The court in *Sturges* went on to state that primarily governments exist for the maintenance of social order. Thus it is that the obligation of the government to protect life, liberty and property against the conduct of the indifferent, the careless and the evil-minded may be regarded as lying at the very foundation of the social compact. A recognition of this supreme obligation is found in those exertions of the legislative power which have as an end the preservation of social order and the protection of the welfare of the public and of the individual. If such legislation be reasonably adapted to the end in view and affords a hearing before judgment, and is not forbidden by some other affirmative provision of constitutional law, it is not to be regarded as

denying due process of law under the provisions of the 14th Amendment.

The court then said:

The law in question is a valid exercise of the police power of the state of Illinois. It rests upon the duty of the state to protect its citizens in the enjoyment and possession of their acquisitions, and is but a recognition of the obligation of the state to preserve social order and the property of the citizen against the violence of a riot or a mob.

The State is the creator of subordinate municipal governments. It vests in them the police powers essential to the preservation of law and order. It imposes upon them the duty of protecting property situated within their limits from the violence of public breaches of the peace like mobs and riots. The duty and obligation thus entrusted to the political subdivision is by *N. J. S. A.* 2A:48–1 to 7, inclusive, emphasized and enforced, by imposing upon the local community, this liability for property losses resulting from the violence of such public tumults.

The imposition of strict liability upon the municipalities when property is destroyed through the violence of a riot is, therrefore, not an unusual police regulation. Neither is it arbitrary as not resting upon reasonable grounds of policy. Such a regulation should have a tendency to deter the lawless, for the sufferers may be compensated by a tax burden which will fall upon all property, including that of the rioters, as members of the community. See *Chicago v. Sturges, supra.* In addition, the rioters may be subjected to the additional burden of reimbursing the municipality under *N. J. S. A.* 2A:48–7.

In *Butte Miners' Union v. Butte,* 58 Mont. 391, 194 *P.* 149 (1920), the Montana Supreme Court expressed the purpose of such riot damage legislation stating:

Primarily, government exists for the maintenance of peace and social order. The purpose of our statute, and those of similar import, is to create municipal liability and tend to instill in the minds of every person liable to contribute to the public expense a will to discourage violence and to stimulate effort to preserve public safety.

Similarly, in *Clark Thread Co., supra,* the former New Jersey Supreme Court upheld the validity of the statute (*Rev.* 1877) and held that since the object of the act was to prevent mobs and riots, it is fair to presume that its purpose would be promoted by making the political district within which the tumult occurred liable to pay damages done to private property.

██ The point has been raised that under *N. J. Const.* (1947) *Art.* IV, § VII, *par.* 11, the statutes under consideration should be liberally construed in favor of the municipal corporation. However, that provision is not applicable since the constitutional provision applies to the *powers* of municipalities. A municipality has only those powers which are granted to it by statute, although those powers, by virtue of the constitutional directive, are to be liberally construed. *Magnolia Development Co. v. Coles,* 10 *N. J.* 223 (1952); *Fred v. Mayor, etc., of Old Tappan Borough,* 10 *N. J.* 515 (1952).

Separate and apart from this argument, it should be noted that penal statutes shall be strictly construed, and remedial statutes liberally construed. However, this rule of construction is inapplicable in this case because the statute is both remedial and penal in nature; it seeks simultaneously to grant relief to the innocent member of society who sustains damage from a riot and to penalize the municipality for its failure to prevent destruction of property by riotous mobs. *A & B Auto Sales, Inc., supra,* at 580; *County of Allegheny v. Gibson's Son & Co.,* 90 *Pa.* 397, 412, 418 (Sup. Ct. 1897).

██ Every reasonable presumption is to be made in favor of the validity of the legislative act, and fairly debatable questions as to the need and the propriety of the means employed to meet the exigency are within the legislative province. *Reingold v. Harper,* 6 *N. J.* 182, 194 (1951).

██ Therefore, it is the opinion of this court that *N. J. S. A.* 2A:48–1 to 7, inclusive, do not violate any of the provisions of the Federal or State Constitutions, and the motion made in behalf of defendant to declare these statutes unconstitutional is hereby denied.