ANNALA, ET UX., APPELLANTS, *v.* McLEOD, ET AL.,
RESPONDENTS.
No. 8821
Submitted February 14, 1949. Decided May 31, 1949.
206 Pac. (2d) 811

Mr. J. J. Thomas, Helena, for appellants. Mr. Thomas argued orally.

Messrs. Tom J. Davis, John K. Claxton, H. J. Freebourn, George D. Toole, Harlow Pease, A. G. Shone, Harry K. Jones, William B. Frame, Arnold H. Olsen, and P. E. Geagan, all of Butte, for respondent McLeod. Mr. Geagan argued the cause orally.

Mr. Alf C. Kremer and Mr. Rex. F. Henningsen, Butte, for respondent Standard Accident Ins. Co. Both argued orally.

DISTRICT JUDGE R. M. HATTERSLEY, sitting in place of Mr. Justice Freebourn, disqualified:

Plaintiffs brought suit for damages against Al McLeod and his surety, Standard Accident Insurance Company, alleging that certain disorderly and riotous persons on April 14, 1946, caused damage to plaintiffs' property in Silver Bow county and that the defendant Al McLeod as sheriff of Silver Bow county failed and neglected to carry out his duties as sheriff of such county as required by sections 4774, 11658 and 11659, R. C. M. 1935.

Defendants filed separate general demurrers to the complaint. The demurrers were sustained. Plaintiffs elected to stand on their complaint and judgment was entered against them. This appeal is from that judgment.

The duties of a sheriff, so far as here applicable, are set forth in the following sections of the Revised Codes of Montana, 1935:

"4774. Duties of sheriff. The sheriff must:

"1. Preserve the peace.

"2. Arrest and take before the nearest magistrate, for examination, all persons who attempt to commit or have committed a public offense;

"3. Prevent and suppress all affrays, breaches of the peace, riots, and insurrections which may come to his knowledge; * * *

"6. Command the aid of as many male inhabitants as [of] his county as he may think necessary in the execution of these duties; * * *."

"11658. Magistrates and officers to command rioters to disperse. Where any number of persons, whether armed or not, are unlawfully or riotously assembled, the sheriff of the county and his deputies, the officials governing the town or city, or the justices of the peace and constables thereof, or any of them, must go among the persons assembled, or as near to them as possible, and command them in the name of the state immediately to disperse."

"11659. To arrest rioters if they do not disperse. If the persons assembled do not immediately disperse, such magistrates

and officers must arrest them, and to that end may command the aid of all persons present or within the county.''

In the event of a riotous or tumultuous assembly, it was the duty at common law of the nearest magistrate to go to the scene of the riot and make his proclamation by ''reading the Riot Act,'' and commanding the rioters to disperse upon the threat of condign punishment, sometimes capital, imposed by the law for failure to obey this command. 4 Blackstone 142.

The office of sheriff is one of great antiquity. As ''reeve of the shire'' or ''shire reeve,'' he was, during his term of office, supreme in rank to any nobleman within the limits of his county. He was a representative of the king, ''the first man in the county.'' 1 Blackstone 339, 343.

In the United States it would appear that the duties of sheriff are substantially the same as they were at common law. He was and is the conservator of the public peace and not liable for an injury to the person or property of an individual occasioned from riotous assembly or mob, unless made so by Constitution or statute.

In Entick v. Carrington, 19 Howell's State Trials, 1029, 1061, Lord Camden remarks: ''No man ever heard of an action brought against a conservator as such; * * *''

Plaintiffs admit that at common law the sheriff was not liable for individual damages occasioned by a riotous mob.

In South v. Maryland, etc., 18 How. 396, 402, 59 U. S. 396, 402, 15 L. Ed. 433, 435, decided April 21, 1856, in speaking of the sheriff, it is said: ''3. As a conservator of the peace in his county or bailiwick, he is the representative of the king, or sovereign power of the State for that purpose. He has the care of the county, and though forbidden by Magna Carta to act as a justice of the peace in trial of criminal cases, he exercises all the authority of that office where the public peace was concerned. He may upon view, without writ or process, commit to prison all persons who break the peace or attempt to break it, he may award process of the peace, and bind anyone in recognizance to keep it. He is bound, ex officio, to pursue and take all traitors, murder-

ers, felons, and other misdoers, and commit them to jail for safe custody. For these purposes he may command the posse comitatus or power of the county; and this summons, everyone over the age of fifteen years is bound to obey, under pain of fine and imprisonment. 4. In his ministerial capacity he is bound to execute all processes issuing from the courts of justice. He is keeper of the county jail, and answerable for the safe keeping of prisoners. He summons and returns juries, arrests, imprisons, and executes the sentence of the court, etc, etc. * * *

"It is an undisputed principle of the common law, that for a breach of a public duty, an officer is punishable by indictment; but where he acts ministerially, and is bound to render certain services to individuals, for a compensation in fees or salary, he is liable for acts of misfeasance or nonfeasance to the party who is injured by them.

"The powers and duties of conservator of the peace exercised by the sheriff are not strictly judicial; but he may be said to act as the chief magistrate of his county, wielding the executive power for the preservation of the public peace. It is a public duty, for neglect of which he is amenable to the public, and punishable by indictment.

"The history of the law for centuries proves this to be the case. Actions against the sheriff for a breach of his ministerial duties in the execution of process are to be found in almost every book of reports. But no instance can be found where a civil action has been sustained against him for his default or misbehavior as conservator of the peace, by those who have suffered injury to their property or persons through the violence of mobs, riots, or insurrections."

This was the condition of the law in the United States, except in states where changed or modified by Constitution or statute, on the 26th day of May, 1864, 13 Stat. 85, the date whereon Congress passed the Organic Act, constituting the Territory of Montana and declaring the common law to be part of the law thereof. Organic Act, sec. 9.

Section 201, Fifth Division Compiled Statutes of 1887 of the

territory of Montana provided: ''That the common law of England, so far as the same is applicable and of a general nature, and not in conflict with special enactments of this territory, shall be the law and the rule of decision, and shall be considered as of full force until repealed by legislative authority.''

At the adoption of the Constitution in 1889, it was provided that all laws enacted by the legislative assembly of the territory, and in force at the time of admission into the Union, not inconsistent with the Constitution or laws of the United States, should remain in full force and effect as laws of the State, until altered or repealed. Constitution, Article XX, Section 1.

Sections 5672, 10703 and 10704, R. C. M. 1935, have to do with the applicability of the common law and existing statutes at the time of the taking effect of the Codes, July 1, 1895. In State ex rel. La Point v. District Court, 69 Mont. 29, 33, 35, 220 Pac. 88, 89, it was said:

''Section 10704, Revised Codes [of Montana] 1921, is as follows: 'The provisions of this Code, so far as they are substantially the same as existing statutes or the common law, must be construed as continuations thereof, and not as new enactments.' Referring to just what is meant by the 'common law,' in Aetna Accident & Liability Co. v. Miller, 54 Mont. 377, 382, 170 Pac. 760, L. R. A. 1918C, 954, Mr. Justice Sanner said: 'Broadly speaking, it means, of course, the common law of England; but it means that body of jurisprudence as applied and modified by the courts of this country up to the time it became a rule of decision in this commonwealth.'

''Section 10703, Revised Codes 1921, is as follows: 'In this state there is no common law in any case where the law is declared by the Code or the statute; but where not so declared, if the same is applicable and of a general nature, and not in conflict with the Code or other statutes, the common law shall be the law and rule of decision.'

''Sections 10704 and 10703, above, were enacted as sections 3454 and 3452, respectively, of the Code of Civil Procedure of 1895, and have been in force at all times since. Under identical

statutory provisions the Supreme Court of California, in Quist v. Sandman, 154 Cal. 748, 99 Pac. 204; Michaelson v. Fish, 1 Cal. App. 116, 81 Pac. 661; Lux v. Haggin, 69 Cal. 255, 384, 4 Pac. 919, 10 Pac. 674, and Sharon v. Sharon, 75 Cal. 1, 13, 16 Pac. 345, has held that the statutes are but continuations of the basic common law, and that when the statute is either silent or ambiguous, in order to determine rights under it an examination of both the common law and the statute is necessary.

"Our Code further recognizes the continuance of the common law, and that the codification does not embrace the whole body of the law in Section 10545, Revised Codes 1921, where it is said: 'Laws whether organic or ordinary are either written or unwritten,' and in section 10549, Id., which is as follows: 'Unwritten law is the law not promulgated and recorded, * * * but which is, nevertheless, observed and administered in the courts of the country. It has no certain repository, but is collected from the reports of the decisions of the courts and treatises of learned men.'

"It will be observed that the provisions of Section 5769, supra, under consideration, are affirmative in character and contain no negative expressions. 'It has been said that the statutes are not presumed to make any alterations in the common law further than is expressly declared, and that a statute made in the affirmative without any negative expressed or implied does not take away the common law.' 25 R. C. L. 1954, sec. 180.

"The rules of the common law are not to be overturned except by clear and unambiguous language. Ryalls v. Mechanics' Mills, 150 Mass. 190, 22 N. E. 766, 5 L. R. A. 667.

"In Endlich on Interpretation of Statutes, 127, the rule is thus stated: 'The principle is recognized that an intent to alter the common law beyond the evident purpose of the act is not to be presumed. It has been expressly laid down that "statutes are not presumed to make any alteration in the common law further or otherwise than the act does expressly declare; therefor in all general matters the law presumes the act did not intend to make any alterations: * * * the rules of the common

law are not to be changed by doubtful implication.'' ' See, also, Potter's Dwarris on Statutes & Constitutions, p. 185; 2 Lewis' Sutherland on Statutory Construction, 2d Ed., secs. 454, 455.''

Finnish Workers Federation v. Horrocks, D. C., 42 F. Supp. 411, decided in 1941, was a suit against the mayor, chief of police, and assistant chief of police of the city of Aberdeen, Washington, for alleged real and personal property damage caused by a mob, wherein it was alleged defendants knew of the conspiracy to cause the damage but neglected and refused to prevent its execution. Plaintiff conceded that South v. Maryland was controlling, but attempted to rely on the Civil Rights Act, 8 U. S. C. A., secs. 47-48, without avail. The court there said: ''This action would not lie against these defendants at common law under the opinion of the United States Supreme Court in South v. Maryland, 18 How. 396, 59 U. S. 396, 15 L. Ed. 433.''

In McPhee v. United States Fidelity & Guaranty Co., 52 Wash. 154, 100 Pac. 174, 175, 21 L. R. A., N. S., 535, 132 Am. St. Rep. 958, it is said: ''The general rule is that a sheriff is never liable at the suit of third. persons unless expressly bound by the duty of his office: Strong v. Campbell, 11 Barb., N. Y., [135], 138; Harrington v. Ward, 9 Mass. 251; South v. Maryland, 18 How. 396, 15 L. Ed. 433; Hullinger v. Worrell, 83 Ill. 220; State, Use of Cocking v. Wade, 87 Md. 529, 40 A. 104, 40 L. R. A. 628.''

In Scougale v. Sweet, 124 Mich. 311, 82 N. W. 1061, 1064, in stating the power and duty of a sheriff at common law, and how the same may be changed to create liability for damages, the court quoted with approval from South v. Maryland, supra, and then said: ''By statute in New York a sheriff is now made liable for damages to property destroyed by a mob or riot, where notice has been given him of the intended mob or riot, and he fails to take steps to prevent it. That statute fixes the liability, which did not exist at the common law, but his duty as conservator of the peace was the same. Schiellein v. Board [of Sup'rs], 43 Barb., N. Y., 490.''

It was not until 1947, being almost a year after the plaintiffs'

claimed cause of action arose, that the legislature of the state of Montana finally passed a law as to the civil liability of a sheriff in instances such as are here alleged.

Section 4774, R. C. M. 1935, subdivisions 1, 2, 3 and 6, and sections 11658 and 11659, R. C. M. 1935, are but declarations of the public duties of sheriffs and other officers as they existed at common law. South v. Maryland, supra; Finnish Workers Federation v. Horrocks, supra; McPhee v. United States Fidelity & Guaranty Co., supra.

None of the decisions of this court are directly in point on the question of the sheriff's liability to an individual for damages sustained through riot or mob action. However, section 5086, R. C. M. 1935, originally enacted as section 5036 of the Political Code of 1895, creates an absolute liability upon cities and towns for injuries caused by mob or riot. The section reads: "Every city or town is responsible for injuries to real or personal property within its corporate limits, done or caused by mobs or riots."

In May v. City of Anaconda, 26 Mont. 140, 142, 66 Pac. 759, 760, in construing the above section the court said: "The sole purpose of the section was to create a liability which did not exist at the common law. Its object was not to relieve municipal corporations of burdens, but to impose a new one." Compare: Butte Miners' Union v. City of Butte, 58 Mont. 391, 401, 194 Pac. 149, 13 A. L. R. 746, and Becker v. Chapple et al., 72 Mont. 199, 202, 203, 205, 232 Pac. 538.

There was no provision imposing liability for damages upon the sheriff, prior to the enactment of Chapter 204, Session Laws of 1947. The provisions in sections 4774, 11658 and 11659, have been the law in this state at least since 1879 and are merely declaratory of the law. They must therefore be given the same construction applied to the common law. Section 10704, R. C. M. 1935.

This court has construed the statutes and common law governing the duty and liability of a sheriff in Sears v. Gallatin County, 20 Mont. 462, 466, 52 Pac. 204, 40 L. R. A. 405, and

McCarthy v. Anaconda Copper Mining Company, 70 Mont. 309, 313, 225 Pac. 391.

State v. Driscoll, 49 Mont. 558, 144 Pac. 153, a suit involving mob violence, recognizes that a sheriff is removable from office as a penalty for failure to perform his public duty.

Plaintiffs rely upon section 10925, R. C. M. 1935, but this section does not change the common law rule respecting a sheriff's liability in damages.

The liability of the surety cannot exceed that of his principal. ■ Gary Hay & Grain Co. Inc. v. Carlson, 79 Mont. 111, 255 Pac. 722. See also: United States v. Allsbury, 4 Wall. 186, 18 L. Ed. 321; Phelps v. Dawson, 8 Cir., 97 F. (2d) 339, 116 A. L. R. 1343, 1348; National Surety Co. of New York v. Ulmen, 9 Cir., 68 F. (2d) 330; 21 Cal. Jur. 929, sec. 106, n. 11; 52 L. R. A. 187, n. 6; 43 Am. Jur. 185, sec. 415, n. 13; Id., sec. 417, p. 186; 50 Am. Jur. 921, sec. 30.

The judgment of the district court is affirmed.

Mr. Chief Justice Adair, Associate Justices Angstman and Metcalf, and District Judge W. R. Flachsenhar, sitting in place of Mr. Justice Bottomly, disqualified, concur.