No. 90-505

IN THE SUPREME COURT OF THE STATE OF MONTANA

1991

JAMES PAUL SANDERS and KATHY SANDERS,

      Plaintiffs and Appellants,

-vs-

SCRATCH GRAVEL LANDFILL DISTRICT
and DOES ONE THROUGH TEN,

      Defendants and Respondents.

FILED

JUL 15 1991

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the First Judicial District,
In and for the County of Lewis and Clark,
The Honorable Jeffrey M. Sherlock, Judge presiding.

COUNSEL OF RECORD:

      For Appellants:

          Carl A. Hatch; Small, Hatch, Doubek & Pyfer, Helena,
          Montana

      For Respondents:

          Mike McGrath, County Attorney, Lewis and Clark
          County, Helena, Montana

Submitted on Briefs:  May 30, 1991

Decided:  July 15, 1991

Filed:

Clerk

Justice John Conway Harrison delivered the Opinion of the Court.

James and Kathy Sanders appeal from an order of the District Court of the First Judicial District, Lewis and Clark County, Montana, granting the motion of Scratch Gravel Landfill District to dismiss their suit. The District Court held that Scratch Gravel Landfill District was immune from suit. We reverse and remand to the District Court.

The issue is whether the District Court erred in determining that, as an agent of a legislative body, Scratch Gravel Landfill District was immune from suit.

James and Kathy Sanders bought a home in Western Hills Subdivision, a few miles north of Helena, Montana, in 1987. In 1989 the couple learned that the aquifer from which they obtained their water had become contaminated with toxic chemicals which they alleged were leached from a nearby dump owned and operated by Scratch Gravel Landfill District. The Landfill District claimed that the chemicals came from a different source, namely from cleaning solvents dumped for years by laundry and dry cleaning establishments into a mine shaft above the property owned by the Landfill District.

Because of the contaminated water supply, the Sanders eventually moved from their home, even though they were unable to sell it. The Sanders filed suit against the Landfill District seeking to recover damages resulting from contamination of their water supply.

The Sanders learned of the water contamination when the

2

Landfill District called a meeting on January 24, 1989, to inform local homeowners that the aquifer from which they obtained their water had become contaminated with toxic chemicals. The Landfill District offered to provide bottled water for drinking and cooking to those who were using contaminated water. The contaminated water was said to be safe for bathing, washing dishes, and watering lawns and gardens.

The Landfill District held other meetings to keep property owners informed and eventually offered a plan to the affected landowners. In a written agreement signed by the Sanders and other homeowners, the Landfill District agreed to provide a new water source and delivery system. In exchange, the homeowners agreed to release the Landfill District from "liability for inconvenience, mental anguish and temporary loss of property values resulting from alleged degradation of ground water." The agreement allowed the homeowners to retain all "rights to seek compensation for any long-term or permanent loss of property value . . ." except for "potential personal injury claims for damages due to alleged contamination of Homeowners' ground water."

Before the Landfill District could implement a new water source and system, the Sanders decided in January 1990 to move from their home claiming they wanted to escape further health risks. According to the Sanders, realtors refused to list their home until the new water supply was in operation. A realtor eventually agreed to list their house with the understanding that full disclosure of the toxic water problems be provided to potential buyers. When the Sanders were unable to sell their house, they filed suit against

the Landfill District and "all unknown defendants Does One through Ten" seeking damages for permanent or long-term loss of value to the property.

I

The issue is whether the District Court erred in determining that Scratch Gravel Landfill District was immune from suit pursuant to § 2-9-111, MCA.

The Landfill District argues that it is immune from suit according to our holding in Burgess v. Lewis and Clark City-County Board of Health (Mont. 1990), 796 P.2d 1079, 47 St.Rep. 1619. In Burgess, we held that an employee of the Scratch Gravel Landfill District could not sue the Lewis and Clark City-County Board of Health, which serves as the board of directors of the Landfill District. The Board, as an agent of a legislative body, the Lewis and Clark County Board of Commissioners, was immune from suit under § 2-9-111(2), MCA, extending governmental immunity to a "legislative body or a member, officer, or agent thereof."

For the past number of years this Court has been divided on the question of legislative immunity granted by § 2-9-111, MCA, enacted in 1977. Case after case has brought dissent. See Love v. Harlem Irrigation District (Mont. 1990), 802 P.2d 611, 47 St.Rep. 2190; Koch v. Yellowstone County (1990), 243 Mont. 447, 795 P.2d 454 (Judge Larry Moran, specially concurring); Eccleston v. Third Judicial District Court (1989), 240 Mont. 44, 783 P.2d 363; and Peterson v. Great Falls School District No. 1 and A (1989), 237 Mont. 376, 773 P.2d 316.

District Court Judge Larry W. Moran, sitting with the Court

4

in Koch, noted in a concurring opinion:

> How beneficial it would be to see (or to write) an opinion on governmental immunity considering provisions of § 2-9-111, MCA, simply concluding: "the act giving rise to the cause of action is clearly administrative or executive, not legislative. Hence, governmental immunity does not attach"--or the reverse, in applicable situations.

That day has now arrived. The 1991 legislature amended § 2-9-111, MCA, by SB 0154 to read:

> **Immunity from suit for legislative acts and omissions.** (1) As used in this section:
>
> (a) the term "governmental entity" means only the state, counties, municipalities, school districts, and any other local government entity or local political subdivision vested with legislative power by statute;
>
> (b) the term "legislative body" means only the legislature vested with legislative power by Article V of The Constitution of the State of Montana and that branch or portion of any other local governmental entity or local political subdivision empowered by law to consider and enact statutes, charters, ordinances, orders, rules, policies, resolutions, or resolves;
>
> (c) (i) the term "legislative act" means:
>
> (A) actions by a legislative body that result in creation of law or declaration of public policy;
>
> (B) other actions of the legislature authorized by Article V of The Constitution of the State of Montana; or
>
> (C) actions by a school board that result in adoption of school board policies pursuant to 20-3-323(1);
>
> (ii) the term legislative act does not include administrative actions undertaken in the execution of a law or public policy.
>
> (2) A governmental entity is immune from suit for a legislative act or omission by its legislative body, or any member or staff of the legislative body, engaged in legislative acts.
>
> (3) Any member or staff of a legislative body is immune from suit for damages arising from the lawful

5

discharge of an official duty associated with legislative acts of the legislative body.

(4) The acquisition of insurance coverage, including self-insurance or group self-insurance, by a governmental entity does not waive the immunity provided by this section.

(5) The immunity provided for in this section does not extend to any tort committed by the use of a motor vehicle, aircraft, or other means of transportation.

. . .

Section 3. Effective date -- retroactive applicability. [This act] is effective on passage and approval and applies retroactively, within the meaning of 1-2-109, to causes of action that have not been reduced to final judgment on or before [the effective date of this act].

Section 2-9-111, MCA (1991).

We conclude that Burgess is no longer controlling. In view of the revisions in § 2-9-111, MCA, as above set forth, including the effective date, this issue must be reconsidered by the District Court.

We reverse the decision of the District Court and remand for reconsideration.

John Conway Harrison
Justice

We concur:

J. A. Turnage
Chief Justice

6

_____

_____

_____
Justices