JUSTICE NELSON
specially concurs and dissents.
¶65 I concur in the analysis and in the result of our Opinion with one exception. I disagree with our application of the judicially-created public duty doctrine. Accordingly, I respectfully dissent from that portion of our Opinion.
¶66 This case directly raises the question of whether the abolition of sovereign immunity under Article II, Section 18 of the Montana Constitution precludes application of the judicially-created public duty doctrine. We have declined to address this argument in favor of simply applying the public duty doctrine. I would hold that this doctrine is a variant of sovereign immunity, is violative of Montana’s Constitution and, therefore, has no application in Montana law.
DISCUSSION
¶67 As background for this separate Opinion, I will briefly trace the origins of sovereign immunity and the public duty doctrine and the roles that each theory has played to shield governments from liability for wrong-doing. Sovereign immunity prevents government liability by holding a governmental entity immune from suit even when its officers breach a duty. On the other hand, the public duty doctrine prevents government liability by declaring that no duty exists. Both doctrines preclude a court from awarding just compensation to the injured victim for injury perpetrated by the negligent governmental tortfeasor. Both doctrines frustrate the clear will of the people of Montana expressed in Article II, Section 18 of our Constitution.

A. Sovereign Immunity

¶68 Sovereign immunity, which is synonymous with governmental tort immunity, proclaims that the government is not liable for the negligent acts of its officers and employees. Barry L. Hjort, The Passing of Sovereign Immunity in Montana: The King is Dead!, 34 Mont. L. Rev. 283, 283 (1973). With its origins in the divine right of kings as construed by the common law of England, the doctrine held that the King could not be sued in the King’s Court because the Court’s authority was subordinant to the King. Therefore, sovereign immunity functioned as a jurisdictional bar and persons unjustly injured by an action of the crown might properly seek monetary redress in the Court of the Exchequer. Hjort, at 284. The English courts extended tort *233 immunity to local units of government on the grounds that “it is better that an individual should sustain an injury than that the public should suffer an inconvenience.” Russell v. The Men of Devon (K.B. 1788), 100 Eng. Rep. 359 (holding the men of the unincorporated county of Devon immune from suit by a wagon owner who was injured crossing a poorly maintained county bridge).
¶69 Imported to the United States during the Nineteenth Century, the doctrine of sovereign immunity sustained intense criticism by courts and legal scholars as “an anachronism without rational basis in a democratic society” and as an abrogation of traditional tort principles, which provide remedies for victims of negligent or wrongful conduct. W. Page Keeton, et al., Prosser & Keeton on the Law of Torts § 125 (4th ed. 1971). Nevertheless, sovereign immunity remained a vital legal construct in most states, shielding public coffers and government actors from liability through the late Twentieth Century.
¶70 Montana courts embraced sovereign immunity dining the territorial period. Langford v. King (1868), 1 Mont. 33, 38 (holding that citizens may not sue the territorial government in the absence of the government’s consent); Fisk v. Cuthbert (1877), 2 Mont. 593. The Montana Constitution of 1889 neither authorized nor prohibited sovereign immunity and courts struggled through the Twentieth Century to apply the doctrine with consistency and reason. Hjort, at 289-93 (discussing selective application of immunity based upon judicial distinctions between government’s proprietary and discretionary functions and judicial recognition of a waiver of immunity to the extent of government’s liability insurance coverage).
¶71 The Delegates to the 1972 Montana Constitutional Convention unequivocally rejected governmental tort immunity concluding that “the doctrine no longer has a rational justification in law.” Report of the Bill of Rights Committee, 1972 Montana Constitutional Convention, Vol. II, at 637. As reported by the Bill of Rights Committee:
[T]he doctrine of sovereign immunity bars tort suits against the state for negligent acts by its officials and employees. The committee finds this reasoning repugnant to the fundamental premise of the [sic] American justice: all parties should receive fair and just redress whether the injuring party is a private citizen or a governmental agency. The committee believes that just as the government administers a system of justice between private parties it should administer the system when the government itself is alleged to have committed an injustice. The *234 committee notes that private firms are liable for the negligence of their employees and points out this fact to indicate the inconsistency of the state’s position in the system of tort law. It is the belief of the committee that this proposed provision rectifies this inconsistency.
Report of the Bill of Rights Committee, 1972 Montana Constitutional Convention, Vol. II, at 637-38.
¶72 Delegate Marshall Murray stated in the deliberations on the proposed section:
This is the doctrine [of sovereign immunity]-all of us know it-the vernacular that the king can do no wrong. It is an old and archaic doctrine.... We feel that the doctrine of sovereign immunity, which we are attempting to do away with by this particular provision, really means that the king can do whatever he wants but he doesn’t have to pay for it; and we’d like to do away with that doctrine.
Verbatim Transcripts of the Montana Constitutional Convention, p. 1760 (March 8, 1972).
¶73 Delegate Wade Dahood, chairman of the Bill of Rights Committee, further explained:
What our committee is really concerned about is making sure that an antiquated doctrine that had no place within American jurisprudence in the first instance is removed from the face of justice in the State of Montana----We have an opportunity now, as long as in Montana no one else will accept it, to make sure that we have full redress and full justice for all of our citizens.... We submit it’s an inalienable right to have remedy when someone injures you through negligence and through a wrongdoing, regardless of whether he has the status of a governmental servant or not....
Verbatim Transcripts of the Montana Constitutional Convention, pp. 1763-64 (March 8, 1972).
¶74 Placed within the Declaration of Rights, Article II, Section 18 of the Montana Constitution states:
State subject to suit. The state, counties, cities, towns, and all other local governmental entities shall have no immunity from suit for injury to a person or property, except as may be specifically provided by law by a 2/3 vote of each house of the *235 legislature.[3]
¶75 Upon the heels of voter approval of the 1972 Montana Constitution, the 1973 Legislature enacted the Tort Claims Act and the Comprehensive State Insurance Plan, codified at §§ 2-9-101 to 318, MCA, which attach “liability to the State in the same manner and to the same extent that liability attaches to a private person.”[4] State ex rel. Byorth v. District Court (1977), 175 Mont. 63, 67, 572 P.2d 201, 203. Section 2-9-102, MCA, provides:
Governmental entities liable for torts except as specifically provided by legislature. Every governmental entity is subject to liability for its torts and those of its employees acting within the scope of their employment or duties whether arising out of a governmental or proprietary function except as specifically provided by the legislature under Article II, section 18, of The Constitution of the State of Montana.
Read together, Article II, Section 18 of the Montana Constitution, and § 2-9-102, MCA, establish the general rule that the State and local governmental entities have no tort immunity unless the Legislature explicitly confers immunity by a two-thirds vote of both houses. Whiting v. State (1991), 248 Mont. 207, 222, 810 P.2d 1177, 1186.
¶76 Within four years of enacting the Torts Claims Act, the 1977 Montana Legislature reinstated limited governmental tort immunity by excepting from liability certain discretionary acts of public officials and placing caps on damage awards. See Title 2, Chapter 9, Part 1, Montana Code Annotated (1977). Section 2-9-111(2), MCA (1977), as amended, granted immunity to a governmental entity for “an act or omission of its legislative body or a member, officer or agent thereof.” The statute further elaborated that, “the term ‘legislative body’ includes the legislature ... and any local governmental entity given legislative powers by statute, including school boards.” Section 2-9-111(1)(b), MCA (1977). Although governmental entities generally remained liable for the torts of employees under § 2-9-102, MCA *236 (1977), judicial interpretation of the legislative immunities granted pursuant to § 2-9-111, MCA (1977), as amended, yielded a roiling series of decisions by this Court during the next fourteen years that affirmed broad governmental tort immunity. See, e.g., W.D. Constr. v. Board of County Comm’rs (1985), 218 Mont. 348, 707 P.2d 1111 (county enjoys immunity from negligence suit for commission’s failure to administer subdivision statutes and regulations); Bieber v. Broadwater County (1988), 232 Mont. 487, 759 P.2d 145 (county enjoys immunity from wrongful discharge suit as a result of commission’s ratification of janitor’s firing by county employee); Peterson v. Great Falls Sch. Dist. No. 1 (1989), 237 Mont. 376, 773 P.2d 316 (school board enjoys immunity from wrongful discharge suit as a result of board ratification of janitor’s firing by administrative assistant); State ex rel. Eccleston v. District Court (1989), 240 Mont. 44, 783 P.2d 363 (school board enjoys immunity from negligence suit because board’s refusal to hire additional janitors accounted for janitor’s failure to clear ice from school steps). See also John A. Kutzman, The King’s Resurrection: Sovereign Immunity Returns to Montana, 51 Mont. L. Rev. 529, 542 (1990) (postulating that judicial use of agency analysis reinstated blanket sovereign immunity for government’s administrative acts).
¶77 The 1991 Legislature addressed the widening scope of governmental tort immunity by amending § 2-9-111, MCA, to limit the terms under which entities enjoyed statutory immunity. See Chap. 821, L. 1991. The amendments restricted legislative immunity by clarifying that “the term legislative act does not include administrative actions undertaken in the execution of a law or public policy.” Section 2-9-111(1)(c)(ii), MCA (1991) (emphasis added). The amended statute also provides that the purchase of liability insurance does not waive immunity. Section 2-9-111(4), MCA (1991). Regarding environmental torts, the statute specifically denies governmental tort immunity for “any act or omission that results in or contributes to personal injury or property damage caused by contamination or other alteration of the physical, chemical, or biological properties of surface water or ground water, for which a cause of action exists in statutory or common law or at equity.” Section 2-9-lll(5)(b), MCA (1991).
¶78 A body of case law since the 1991 amendment affirms that a governmental entity is subject to suit for injury to a person or property resulting from an administrative action of a government employee acting within the scope of employment. See, e.g., Koch v. Billings Sch. Dist. No. 2 (1992), 253 Mont. 261, 833 P.2d 181 (physical education teacher’s instruction to student to squat press 360 pounds not a *237 legislative act; school board has no immunity for teacher’s negligence); Hedges v. Sch. Dist. No. 73 (1992), 253 Mont. 188, 832 P.2d 775 (school district has no immunity from suit for teacher’s negligent injury of a student with shot put); Knight v. Missoula (1992), 252 Mont. 232, 827 P.2d 1270 (street repair is an administrative function; city has no immunity from suit for negligent maintenance); Dagel v. Great Falls (1991), 250 Mont. 224, 819 P.2d 186 (supervisor’s harassment of city employee not a legislative act; city has no immunity from suit for nuisance); Sanders v. Scratch Gravel Landfill Dist. (1991), 249 Mont. 232, 814 P.2d 1005 (public landfill district has no immunity from suit for damages caused by a contaminated water supply); Quirin v. Weinberg (1992), 252 Mont. 386, 830 P.2d 537 (property assessor’s misrepresentation of building location is administrative act; State enjoys no immunity from action in negligence). See also James E. Conwell, Limitations on Legislative Immunity: A New Era for Montana’s Sovereign Immunity Doctrine, 54 Mont. L. Rev. 127 (1993).

B. Public Duty Doctrine

¶79 The public duty doctrine is a judicially-created precept succinctly expressed by this Court in a logical absurdity: “[A] duty owed to all is a duty owed to none.” Nelson v. Driscoll, 1999 MT 193, ¶ 21, 295 Mont. 363, ¶ 21, 983 P.2d 972, ¶ 21 (citation omitted).
¶80 The genesis of the public duty doctrine in the United States may be traced to South v. Maryland (1856), 59 U.S. 396, 18 How. 396, 15 L.Ed 433. In South, the plaintiff alleged that he was kidnapped, held for four days and released only when he paid ransom money to his kidnappers. Asserting that the local sheriff knew that he had been unlawfully detained yet did nothing to obtain his release, South sued the sheriff for nonfeasance. The circuit court awarded South a substantial judgment. The United States Supreme Court reversed and declared that a sheriffs duty to keep the peace was “a public duty, for neglect of which he is amenable to the public, and punishable by indictment only.” South, 59 U.S. at 403.
¶81 While logic would suggest that a duty to the public is a duty to everyone, rather than a duty to no one, the common law public duty doctrine provides that for one to recover in tort for the failure of a governmental officer to act properly, it must be shown that the duty breached was owed to the injured person individually and not merely to the general public. A popular Nineteenth Century treatise explained the rule as follows:
[I]f the duty which the official authority imposes upon an officer *238 is a duty to the public, a failure to perform it, or an inadequate or erroneous performance, must be a public, not an individual injury, and must be redressed, if at all, in some form of public prosecution. On the other hand, if the duty is a duty to the individual, then a neglect to perform it, or to perform it properly, is an individual wrong, and may support an individual action for damages.
T. Cooley, A Treatise on the Law of Torts 379 (1879).
¶82 The public duty doctrine gained acceptance in the courts of most states, including Montana, where the precept often was applied to cases involving allegations of negligent police protection.
¶83 Generally, those who advocate for the doctrine argue that it protects government entities from a flood of lawsuits that could potentially cripple the public coffers and that it protects those entities which provide much needed but high risk services, where potential liability or the fear of potential liability would eliminate those services. See Frank Swindell, Municipal Liability for Negligent Inspections in Sinning v. Clark-A “Hollow” Victory for the Public Duty Doctrine, 18 Campbell Law Review 241, 249-51 (Spring 1996).
¶84 On the other hand, the doctrine has been criticized because it allows government entities to use the shield of sovereign immunity when the legislature no longer mandates such immunity; when application of the doctrine requires plaintiffs injured by a negligent official suffer solely because of the governmental status of the tortfeasor; when application of the doctrine promotes incompetence by providing no meaningful incentive for the government entity to provide services of optimal quality; and because, even when the doctrine is eliminated, plaintiffs must still prove duty, breach of duty, causation and damages-a substantial burden in any negligence suit. Moreover, given the wide availability of liability insurance, government entities may limit exposure of the public treasury while still compensating injured individuals. Swindell, at 249-51
¶85 In Montana, citing South v. Maryland for the proposition that no liability attaches in common law for a sheriffs breach of duty, this Court rejected the claims of Butte landowners that the county was liable for the sheriffs failure to protect their property during a riot. Annala v. McLeod (1949), 122 Mont. 498, 504, 206 P.2d 811, 814-15. Acknowledging that the sheriff had both a statutory and common law duty to conserve the peace, this Court observed that the duty was to the public and no statute fixed civil liability. Therefore, common law controlled the case and assigned no liability for breach of a public duty. *239 The Court concluded that neither the sheriff nor the local government were liable for the homeowners’ damages. Annala, 122 Mont. at 504, 206 P.2d at 814.
¶86 Without naming the public duty doctrine, this Court noted in Phillips v. Billings (1988), 233 Mont. 249, 253, 758 P.2d 772, 775, that “[t]he majority rule states that [a police officer’s] general duty to protect does not give rise to liability for a particular individual’s injury absent a greater duty imposed by a special relationship.” Then, in Nelson, we further explained how a special relationship gives rise to a special duty, which attaches liability in common law for the negligent acts of government actors. A special relationship may be created: (1) by a statute intended to protect a specific class of persons from a particular type of harm and the plaintiff is a member of that class; (2) when a government agent undertakes specific action to protect a person or property; (3) by governmental actions that reasonably induce detrimental reliance by a member of the public; and (4) under certain circumstances, when the agency has actual custody of the plaintiff or of a third person who causes harm to the plaintiff. Nelson, ¶ 22 (citing Day v. State (Utah 1999), 980 P.2d 1171, 1175).
¶87 In Nelson, a police officer stopped a couple under suspicion of driving while intoxicated. The officer did not arrest the driver, but directed her to park the car and offered the couple a ride home. The couple declined the offer and began walking along the roadway, where the woman was struck by a drunk driver and died. Her husband sued the officer and the county for negligence. Examining the circumstances in which a police officer enters a special relationship with an individual, the Court recounted that an officer has a special duty to protect a person who is in the officer’s custody or control; to protect third parties from harm by a person in police custody; and to protect persons for whom the officer has voluntarily provided service. Nelson, ¶¶ 25-38. Although the decedent was not in police custody at the time of the accident, the Court concluded that a special relationship existed because the officer assumed a duty to protect the woman from a foreseeable risk of harm when he restricted her driving privilege. Nelson, ¶ 39. Since a question remained whether the officer failed to exercise reasonable care when he allowed the woman to walk home, summary judgment was inappropriate. Nelson, ¶ 40.
¶88 The analysis of the duty owed by governmental entities under the public duty doctrine has come under increasing scrutiny in recent years, especially as courts have applied the doctrine to shield governments from liability when sovereign immunity is unavailable as *240 a bar against tort actions. Deborah L. Markowitz, Municipal Liability for Negligent Inspection and Failure to Enforce Safety Codes, 15 Hamline J. Pub. L. & Pol’y 181, 187 (Spring 1994). A significant number of states where strong statutory provisions or judicial decisions abrogate governmental tort immunity now reject the public duty doctrine altogether. Adams v. State (Alaska 1976), 555 P.2d 235; Ryan v. State (Ariz. 1982), 656 P.2d 597; Leake v. Cain (Colo. 1986), 720 P.2d 152; Commercial Carrier Corp. v. Indian River County (Fla. 1979) 371 So.2d 1010; Fowler v. Roberts (La. 1989), 556 So.2d 1; Jean W. v. Commonwealth (Mass. 1993) 610 N.E.2d 305; Maple v. Omaha (Neb. 1986), 384 N.W.2d 254; Doucette v. Town of Bristol (N.H. 1993), 635 A.2d 1387; Schear v. Board of County Comm’rs (N.M. 1984), 687 P.2d 728; Wallace v. Ohio DOC (Ohio 2002), 773 N.E.2d 1018; Brennen v. Eugene (Or. 1979), 591 P.2d 719; Coffey v. Milwaukee (Wis. 1979), 247 N.W.2d 132; DeWald v. State (Wyo. 1986), 719 P.2d 643.
¶89 Article II, Section 18 of the Montana Constitution, abolishes sovereign immunity in Montana by ensuring that every person has the fundamental right to sue a Montana governmental entity for injury to person or property. This constitutional provision also provides that governmental entities may be immunized from suit by statute enacted upon a two-thirds vote of both houses of the Legislature. Since the precepts of the public duty doctrine have never been codified, the common law public duty doctrine, as applied by the Court in the case at bar, exists only by dint of judicial decree in Montana. Because the public duty doctrine works to create governmental tort immunity in the absence of an explicit legislative grant of immunity and infringes upon the fundamental constitutional right of persons to sue a Montana governmental entity for injury to person or property, I would hold that the public duty doctrine has no place in Montana jurisprudence.
¶90 As for Justice Regnier’s special concurrence, I do not disagree that the Montana Sheriffs’ and Peace Officers’ Association has raised legitimate concerns and arguments. The point is, however, that, under the Constitution, it is the Legislature’s job to deal with those concerns; it is not this Court’s.
¶91 Indeed, the rebuttal to our approach is best articulated by former Chief Justice Jean A. Turnage in Galt v. State Dept. of Fish, Wildlife (1987), 225 Mont. 142, 731 P.2d 912. Chief Justice Turnage cautioned against resolving cases on the basis of judicially-created theories by ignoring the Constitution. Specifically, Chief Justice Turnage stated:
This Court should not resort to creating or finding legal theories when a result can be reached from express constitutional *241 language.
Galt, 225 Mont. at 149, 731 at 916 (Turnage, C.J., concurring).
¶92 Here, the express language of Montana’s Constitution resolves the legal question at issue in this case. We err in relying on a judicially-created legal theory to the exclusion of the Constitution.
CONCLUSION
¶93 I would hold that the unequivocal intent of the Delegates to the 1972 Constitutional Convention, embodied in Article II, Section 18 of the Montana Constitution, was to abolish sovereign immunity and to expose governmental entities to suit for injury to a person and property in exactly the same way that private persons and private nonhuman entities are exposed. Within a year of the ratification of the Constitution, Montana voters approved a legislative referendum that conferred upon the Legislature the power to enact by a two-thirds majority in both houses specific statutory exceptions that limit the exposure of governmental entities to suit. I conclude that the common law public duty doctrine, which provides that government actors owe no duty to the general public in the absence of a special relationship between a governmental entity and a specific individual, works to reinstate governmental tort immunity by judicial decree and frustrates the will of the people as expressed in Article II, Section 18 of our Constitution.
¶94 Indeed, if something akin to the public duty doctrine is to continue as part of Montana law as an exception to Article II, Section 18, of our Constitution, then the Constitution itself unambiguously provides for the method and clearly delineates the proper branch of government to accomplish that task. It is the Legislature’s prerogative, not the Judiciary’s.
¶95 I would hold that the constitutional abrogation of governmental tort immunity under Article II, Section 18 of the Montana Constitution precludes judicial application of the public duty doctrine, and I would reinstate the jury’s verdict in this cause without reference to that doctrine.
¶96 I respectfully dissent from our failure to so hold.

 The provision allowing the Legislature to provide for governmental tort immunity by a two-thirds majority was approved by referendum vote in 1974.

 This Court also held, however, that certain common law personal immunities, separate and distinct, were not affected by Article II, Section 18. See State ex rel. Dept. of Justice v. District Court (1976), 172 Mont. 88, 560 P.2d 1328 (the doctrine of prosecutorial immunity is not affected by Article II, Section 18); Koppen v. Board of Medical Examiners (1988), 233 Mont. 214, 759 P.2d 173 (the doctrine of quasi-judicial immunity is not affected by Article II, Section 18). Judicial and legislative immunity also exist by statute. Sections 2-9-111 and 112, MCA.