Justice Laurie McKinnon delivered the Opinion of the Court.
***310 ¶ 1 The United States Court of Appeals for the Ninth Circuit presented the following certified question to this Court on May 30, 2017: "Whether, under Montana law, the public duty doctrine shields a law enforcement officer from liability for negligence where the officer is the direct and sole cause of the harm suffered by the plaintiff?" We accepted the question on June 6, 2017, and held oral argument on November 29, 2017. We exercise our authority pursuant to M. R. App. P. 15(4) and reformulate the question as:
Under Montana law, when a plaintiff claims he was injured directly by an officer's affirmative acts, does the public-duty doctrine exclude all duties that may arise *303 pursuant to generally applicable principles of negligence?
¶ 2 For the reasons set forth below, we conclude that the answer to the reformulated question is no. Law-enforcement officers owe the public a general duty to preserve the peace and protect the public from harm inflicted by third persons or other independent sources. The public-duty ***311 doctrine recognizes that, because the duty to protect[1] is owed to the public generally, an officer does not have a legal duty to protect each individual plaintiff absent a special relationship. Accordingly, breach of that general duty is actionable only in the form of criminal prosecution or administrative disposition; it is not a proper basis for an individual plaintiff's negligence claim. However, independent of the duty to protect and based on generally applicable principles of negligence, an officer may owe a legal duty to a person injured directly by the officer's affirmative actions. The public-duty doctrine only applies to an officer's duty to protect the general public, and therefore does not apply to exclude the legal duty an officer may owe to a person injured directly by the officer's affirmative actions. In this case, Robert Bassett-a homeowner injured in the course of Officer Paul Lamantia's pursuit of a criminal suspect-alleges he was injured directly by Lamantia's affirmative acts. Therefore, the public-duty doctrine is inapposite and we find that Lamantia owed Bassett a legal duty to exercise the same care that a reasonable officer with similar skill, training, and experience would under the same or similar circumstances.[2]
FACTUAL AND PROCEDURAL BACKGROUND
¶ 3 The United States Court of Appeals for the Ninth Circuit submitted factual information in its certification order, which we summarize as follows.
¶ 4 Officer Lamantia and his partner responded to a neighborhood disturbance around 12:30 a.m. At the scene, Lamantia observed a male suspect running into a driveway. The suspect jumped over a retaining wall and proceeded into Bassett's backyard. Lamantia identified himself as a police officer and ordered the suspect to stop. The suspect continued to run and Lamantia followed on foot, jumping over the retaining wall but dropping his flashlight in the process.
¶ 5 In the meantime, Bassett came out of his house to investigate the commotion. Lamantia, searching for his flashlight, heard footsteps behind him and turned around to see Bassett approaching. Fearing for ***312 his safety, Lamantia tackled Bassett to the ground. Lamantia released Bassett as soon as he realized that Bassett was not a threat. Bassett then pointed Lamantia in the suspect's direction and Lamantia continued pursuit. Later that morning, Lamantia returned to check on Bassett, who declined an ambulance or medical help. A few hours later, however, Bassett called the police department to report that he was injured during his encounter with Lamantia. Bassett was subsequently diagnosed with a torn rotator cuff.
¶ 6 Bassett later sued Lamantia and the City of Billings in state court. Bassett alleged a state-law negligence claim against Lamantia for failing to exercise reasonable care in performing his duties and a 42 U.S.C. § 1983 violation. Lamantia and the City removed the case to federal court, where the United States District Court entered summary judgment in their favor on both claims. Regarding the negligence claim, the court found that the public-duty doctrine shielded Lamantia and the City from liability because no special relationship existed. Bassett appealed the court's decision concerning only the negligence claim to the Ninth Circuit Court of Appeals. Based on these facts, the Ninth Circuit certified to this Court the public-duty doctrine question.[3]
*304 ***313 STANDARD OF REVIEW
¶ 7 M. R. App. P. 15(3) permits this Court to answer a question of law certified to it by another qualifying court. Accordingly, as a question of law, our review of a certified question is "purely an interpretation of the law as applied to the agreed facts underlying the action." N. Pac. Ins. Co. v. Stucky , 2014 MT 299, ¶ 18, 377 Mont. 25, 338 P.3d 56 (quoting Van Orden v. United Servs. Auto. Ass'n , 2014 MT 45, ¶ 10, 374 Mont. 62, 318 P.3d 1042 ).
DISCUSSION
¶ 8 Preliminarily, we observe from the parties' briefing and statements during oral argument that not all facts contained in the certification order are necessarily agreed upon. For example, Bassett disputes whether he approached Lamantia prior to being tackled; instead, he maintains that he was standing in his front yard near his house when tackled. We can nonetheless answer the certified question without relying on potentially disputed facts, as our inquiry deals exclusively with whether Lamantia owed Bassett a legal duty. Importantly, the certification order specifies that Bassett alleges Lamantia failed to exercise reasonable care in performing his duties when Lamantia tackled Bassett to the ground. Because our answer to the reformulated certified question depends entirely on what specific duty Bassett alleges Lamantia owed him, disagreement over other facts is immaterial to our analysis.
¶ 9 As another preliminary matter, we explain our reasons for reformulating the certified question. The question as originally asked risks an overly broad answer that could expand application of the public-duty doctrine to exclude other applicable duties. We also do not want to improperly blend negligence elements, such as duty and causation. The question as originally phrased asked us to consider whether the public-duty doctrine shielded "a law enforcement officer from liability for negligence where the officer is the direct and sole cause of the" plaintiff's harm. In his briefing, Bassett urges us to hold that the public-duty doctrine does not apply in cases where an officer is "the direct and sole cause of the harm suffered by the plaintiff." Causation, however, is a separate element of a negligence claim, unrelated to identifying any legal duty the defendant may owe the plaintiff.
***314 Lopez v. Great Falls Pre-Release Servs. , 1999 MT 199, ¶ 18, 295 Mont. 416, 986 P.2d 1081. The public-duty doctrine applies only to the legal duty owed, not to causation. Further, any question of causation must be left to the fact finder. Our reformulated certified question allows for consideration of whether Lamantia owed Bassett a duty, independent of the duty to protect and preserve the peace. Bassett contends that he was injured directly by Lamantia's affirmative *305 acts, not from harm inflicted by a third party. Specifically, Bassett is not claiming that Lamantia failed to protect Bassett from an outside harm; instead, Bassett is claiming that Lamantia's affirmative act of tackling him to the ground was negligent. Therefore, we reformulated the certified question to allow for inquiry of whether a duty, independent of the duty to protect and preserve the peace, is owed when a person in Bassett's circumstances alleges he was directly injured by an officer's affirmative acts.
¶ 10 To succeed in a negligence claim, a plaintiff must establish that the defendant had a legal duty; the defendant breached that duty; the breach caused injury; and damages. Lopez , ¶ 18. Thus, any claim of negligence first requires that the defendant owe a legal duty to the plaintiff. Lopez , ¶ 18. Whether a legal duty exists is a matter of law to be decided by the court. Massee , ¶ 27. In determining whether duty exists, we consider whether imposing a duty comports with public policy and "whether the defendant could have foreseen that his conduct could have resulted in an injury to the plaintiff." Fisher v. Swift Transp. Co. , 2008 MT 105, ¶ 17, 342 Mont. 335, 181 P.3d 601. Thus, duty is mainly a question of foreseeability-whether the person injured was within the scope of risk created by the defendant's action. Lopez , ¶ 28.
¶ 11 Law-enforcement officers assume an obligation to the public to protect and preserve the peace. Indeed, law enforcement's duty to protect arises from its overarching duty to furnish police protection to the public in general. The public-duty doctrine, a rule of common law negligence, provides that a law-enforcement officer does not owe a legal duty to an individual plaintiff where the plaintiff alleges he or she suffered harm from the officer's breach of the general duty to protect and preserve the peace. Nelson , ¶ 21. In cases where the public-duty doctrine applies to exclude an officer's duty, no duty is owed because "a governmental entity cannot be held liable for an individual plaintiff's injury resulting from a governmental officer's breach of a duty owed to the general public rather than to the individual plaintiff." Massee , ¶ 41 ; Gatlin-Johnson v. City of Miles City , 2012 MT 302, ¶ 14, 367 Mont. 414, 291 P.3d 1129. The doctrine exists to address and define the element of duty and is premised upon the principle that each discretionary ***315 choice made by an officer while carrying out his professional duty to protect the general public should not be subject to a jury's review with the benefit of hindsight.
¶ 12 The public-duty doctrine "serves the important purpose of preventing excessive court intervention into the governmental process by protecting the exercise of law enforcement discretion," Nelson , ¶ 21, and protects government entities "from liability for failure to adequately enforce general laws and regulations, which were intended to benefit the community as a whole," Gatlin-Johnson , ¶ 14 (quoting E. McQuillin, The Law of Municipal Corporations , § 53.04.25 at 195-97 (3d ed. 2003) ). Because of the often split-second decisions made by law enforcement, officers must be afforded "broad discretion to proceed without fear of civil liability in the unflinching discharge of their duties." Ashburn v. Anne Arundel County , 306 Md. 617, 510 A.2d 1078, 1084 (1986) (quoting Morgan v. District of Columbia , 468 A.2d 1306, 1311 (D.C. 1983) ) (internal quotations omitted). The doctrine "expresses the policy that a police officer's duty to protect and preserve the peace is owed to the public at large and not to individual members of the public." Nelson , ¶ 21, accord Gatlin-Johnson , ¶ 14 ; Massee , ¶ 41. See also Kent v. City of Columbia Falls , 2015 MT 139, ¶ 23, 379 Mont. 190, 350 P.3d 9 (quoting Gonzales , ¶ 20 ) (reiterating that an officer's "duty to protect and preserve the peace is owed to the public at large and not to individual members of the public" and therefore the public-duty doctrine provides that an officer has "no duty to protect a particular person absent a special relationship"). The doctrine has acquired the simple and oxymoronic description of "a duty owed to all is a duty owed to none," because a government entity or person has no duty to each individual when the government owes that same duty to each and every person. Massee , ¶ 41 (quoting Nelson , ¶ 21 ). Therefore, we apply the public-duty doctrine to cases where the plaintiff claims that an *306 officer breached his duty to protect and preserve the peace.[4]
¶ 13 To better distinguish the duty to protect and preserve the peace from other independent duties a law-enforcement officer may owe an individual plaintiff, we begin by examining development of the public-duty doctrine and its application in Montana. In 1856, the United States Supreme Court first recognized the public-duty doctrine in South v. Maryland , 59 U.S. 396, 401, 18 How. 396, 15 L.Ed. 433 (1856), where a plaintiff, ***316 kidnapped and held for ransom, contended that the sheriff knew about the incident but neglected to "protect and defend" him. The Court noted the plaintiff did not allege the sheriff breached a duty in which the sheriff was personally interested, such as execution of a writ, but instead the plaintiff alleged that the sheriff neglected to "preserve the public peace ." South , 59 U.S. at 401 (emphasis added). The Court emphasized that the sheriff's alleged failure to preserve the public peace was a "public duty, for neglect of which he is amenable to the public, and punishable by indictment only." South , 59 U.S. at 403. The Court reasoned that such an interpretation was consistent with precedent, as "no instance [could] be found where a civil action [was] sustained against [a sheriff] for his default or misbehavior as conservator of the peace by those who have suffered injury to their property or persons through the violence of mobs, riots, or insurrections." South , 59 U.S. at 403 (emphasis added). The Court explained that the sheriff owed no duty to the plaintiff because the individual plaintiff's rights were not "restrained or hindered by the malicious act of the sheriff." South , 59 U.S. at 403 (emphasis added).
¶ 14 Although not specifically naming it as such, Montana adopted the public-duty doctrine in Annala v. McLeod , 122 Mont. 498, 206 P.2d 811 (1949), relying on South to describe the doctrine as applying to the sheriff's general duty to preserve the peace. The plaintiff alleged that "riotous persons" damaged his property and that the sheriff "failed and neglected to carry out his duties as sheriff" as required by law. Annala , 122 Mont. at 499, 206 P.2d at 812. This Court, citing South extensively, held the sheriff was "the conservator of the public peace and not liable for an injury to the person or property of an individual occasioned from riotous assembly or mob, unless made so by Constitution or statute." Annala , 122 Mont. at 500, 206 P.2d at 813 (emphasis added).
¶ 15 This Court's analysis of the public-duty doctrine remained focused on law enforcement's general duty to protect and preserve the peace in Phillips v. City of Billings , 233 Mont. 249, 758 P.2d 772 (1988). In Phillips , we held that an officer was not liable for an alleged breach of the duty to protect when he failed to arrest a suspected intoxicated driver where there was no supporting probable cause. Phillips , 233 Mont. at 253, 758 P.2d at 775. We refused to "find a duty based on the officers' general duty to protect the traveling public ." Phillips , 233 Mont. at 253, 758 P.2d at 775 (emphasis added). The plaintiff contended that the officer also had a duty to act with reasonable care under the circumstances, but we determined that the officer did not have a duty ***317 to act reasonably absent "a showing that the officers had a duty to protect [the plaintiff] from danger posed by [the officers]." Phillips , 233 Mont. at 253, 758 P.2d at 775.
¶ 16 We again addressed an officer's duty to protect a plaintiff from third-party harm in Nelson v. Driscoll , where we also first named the public-duty doctrine. In Nelson , an officer pulled over a suspected drunk driver. Nelson , ¶ 7. The officer did not believe he had probable cause to place the driver under arrest, but nonetheless did not want her driving. Nelson , ¶ 10. Therefore, he requested that she park the car and offered to give her and her passenger a ride home. Nelson , ¶ 10. Both refused a ride and proceeded to walk along the roadway. Nelson , ¶¶ 11-12. As she walked away, the driver was struck and killed by a vehicle operated by an intoxicated driver. Nelson , ¶ 13. Her survivors filed suit against the officer, alleging the officer negligently failed to protect her from the harm *307 she suffered. Nelson , ¶¶ 14, 23. We noted that an officer owes a general duty to protect and preserve the peace to the public at large, not to individual members of the public. Nelson , ¶ 21. However, we held that a special relationship existed because the officer undertook specific actions to ensure the driver's safety and, by taking those actions, the officer assumed the duty to protect her from harm. Nelson , ¶ 38. Concluding the officer owed the driver a legal duty to protect her from harm inflicted by a third party because of the special relationship, we instructed that the question of whether the officer breached that legal duty was a question of fact for the jury to decide. Nelson , ¶ 40.
¶ 17 Following Nelson , our analysis of the public-duty doctrine remained focused on cases where officers allegedly breached a duty to protect the victim from outside or third-party harm. See , e.g. , Gonzales , ¶¶ 20, 26 (holding that the police officers were not liable for failing to protect a store clerk from harm inflicted by a robber because the only duty the officers owed the store clerk was one of a general duty to protect and preserve the peace, which is owed to the public at large and not to an individual member of the public); Eklund v. Trost , 2006 MT 333, ¶¶ 36-39, 335 Mont. 112, 151 P.3d 870 (holding that an officer had a duty to protect a person injured by the driver of a car the officer was pursuing in a high-speed chase because a special relationship existed based on statute); Massee , ¶¶ 42-43 (holding that a sheriff had a duty to protect a wife from her husband because a special relationship existed based on statute). We continually recognize that the public-duty doctrine "expresses the policy that an officer's overarching duty to protect and preserve the peace is owed to the public at large, not to ***318 individual members of the public." Doris Nelson , ¶ 41 (citing Eklund , ¶ 33, and Nelson , ¶ 21 ) (emphasis added).
¶ 18 In this case, Bassett is not alleging that Lamantia breached a general duty to protect the public; instead, Bassett is alleging that Lamantia acted negligently in tackling him to the ground as Lamantia pursued a suspect. The public-duty doctrine is therefore inapposite and not relevant when, as here, the negligence action is premised upon the existence of a duty other than the duty to protect and preserve the peace. "A duty owed to all is a duty owed to none" does not apply when the alleged duty breached is not owed to "all," but rather owed to an individual. The foregoing precedent demonstrates that expanding the public-duty doctrine to apply to other duties owed to an individual in Bassett's position, arising from generally applicable negligence principles, would be both analytically unsound and clearly inconsistent with the underlying principles justifying the doctrine. While an officer must be afforded discretion in protecting the public and preserving the peace, it does not follow that an officer owes no other duties to those he encounters as he carries out his job responsibilities.
¶ 19 Although we have not previously considered whether a duty independent of the duty to protect and preserve the peace arises where the plaintiff alleges he was directly injured by an officer's negligent affirmative acts, our precedent does recognize that the public-duty doctrine is not applicable in every negligence case where the defendant is a government entity or person. Gatlin-Johnson , ¶ 17. As we explained in Gatlin-Johnson , the public-duty doctrine "was not intended to apply in every case to the exclusion of any other duty a public entity may have. It applies only if the public entity truly has a duty owed only to the public at large ... [and] does not apply where the government's duty is defined by other generally applicable principles of law." Gatlin-Johnson , ¶ 17. When presented with a negligence claim where the defendant is a governmental entity or person, courts must first identify the alleged duty breached and determine whether the "defendant has a specific duty to a plaintiff arising from 'generally applicable principles of law' that would support a tort claim." Kent , ¶ 39 (quoting Gatlin-Johnson , ¶ 17 ). In most instances involving law enforcement, the alleged duty breached is the duty to protect and preserve the peace. The public-duty doctrine applies in those cases and provides that an officer does not owe a plaintiff a legal duty absent a special relationship. However, in instances where the facts inform that an officer owed a duty to an individual, independent *308 of the general duty to protect and preserve the peace owed to the public, the public-duty doctrine does not foreclose a plaintiff's negligence claim. The inquiry ***319 necessarily focuses on identifying what duty, if any, is owed to whom. Where the plaintiff claims he was directly injured by an officer's affirmative acts, the officer owes the plaintiff a legal duty to exercise the same care that a reasonable officer with similar skill, training, and experience would under the same or similar circumstances.
¶ 20 Recently, in Kent v. City of Columbia Falls , we distinguished a claim of negligence based on an affirmative act by a government entity or person from a claim of negligence based on a failure to protect or preserve the peace. Kent , ¶¶ 47-50. We observed that in Cope v. Utah Valley State College , 342 P.3d 243, 255 (Utah 2014), the Utah Supreme Court reasoned that the government's affirmative actions "had advanced to a stage where it had a duty to act in a reasonable manner to prevent injuries." We analogized Cope to the situation in Kent , holding that the "City was actively involved in the design of the path, knew of its dangerous grade, had the statutory authority to compel a modification, and yet exercised its statutory and contractual authority to approve it." Kent , ¶ 52. Thus, we held the public-duty doctrine did not apply because "the City could be held liable to [the plaintiff] should [she] establish her claims premised on violation of statutory duty and/or the voluntary assumption of a duty to act with ordinary care" and remanded the case for a trial on the merits. Kent , ¶¶ 52-53.
¶ 21 Differentiating between a plaintiff's claim that he was injured because law enforcement breached a duty to protect or preserve the peace and a plaintiff's claim that he was injured directly by an officer's affirmative acts reflects our recognition that the public-duty doctrine does not apply simply because the defendant is a government officer or agency. Gatlin-Johnson , ¶ 17. See also Kent , ¶ 47 ; Phillips , 233 Mont. at 253, 758 P.2d at 775. Our precedent distinguishes between the government's duty "truly ... owed only to the public at large" and a duty situated in "other generally applicable principles of law." Kent , ¶ 38 (quoting Gatlin-Johnson , ¶ 17 ). The distinction is also supported by other states' reasoning. See, e.g., Cope , 342 P.3d at 251 (limiting application of the public-duty doctrine to omissions and clarifying that the doctrine does not include affirmative acts); Jones v. Maryland , 425 Md. 1, 38 A.3d 333, 347 (2012) (recognizing that the public-duty doctrine "does not apply if law enforcement is not engaged in protecting the public from an injurious force caused by a member of the public, but rather is itself the alleged injurious force"); Strickland v. Univ. of N.C. at Wilmington , 213 N.C.App. 506, 712 S.E.2d 888, 893 (2011) (explaining that the public-duty doctrine applies only to duty, not causation, and shields "a governmental entity from liability only where the entity was ***320 not the impetus for, i.e. , did not bring about, the injurious force"); Virginia v. Burns , 273 Va. 14, 639 S.E.2d 276, 279 (2007) (refusing to extend the public-duty doctrine to include a road construction crew's affirmative acts in creating a dangerous roadway condition); Liser v. Smith , 254 F.Supp.2d 89, 102 (D.D.C. 2003) (noting that the public-duty doctrine deals specifically with a public official's duty to protect individual members of the general public and is "wholly inapposite in a case ... where the alleged harm was brought about directly by the officers themselves, and where there is no allegation of a failure to protect"); Gleason v. Peters , 568 N.W.2d 482, 484, 487 (S.D. 1997) (finding that officers had no duty to stop a house party because the officers' actions did not contribute to, increase, or change the already existing risk); District of Columbia v. Evans , 644 A.2d 1008, 1017 n.8 (D.C. 1994) (noting that the public-duty doctrine "deals with the question of whether public officials have a duty to protect individual members of the general public against harm from third parties or other independent sources" and therefore is inapplicable in a case where the plaintiff alleges harm "caused directly by the officers at the scene"); Coty v. Washoe Cnty. , 108 Nev. 757, 839 P.2d 97, 99 (1992) (holding that the public-duty doctrine does not apply in cases "where a public officer's conduct 'affirmatively causes' harm to an individual") (internal citations omitted; emphasis in original); *309 Dauffenbach v. City of Wichita , 233 Kan. 1028, 667 P.2d 380, 385 (1983) (finding that the public-duty doctrine does not apply where an officer's affirmative act allegedly injures the plaintiff).
¶ 22 For the foregoing reasons, we conclude that the public-duty doctrine is inapplicable in the rare and limited factual situations, such as the one here, where the alleged duty breached is not one of a general duty to protect and preserve the peace. Because the public-duty doctrine does not preclude an officer's duty in those cases, courts must apply general negligence principles to determine whether a legal duty exists as a matter of law. See , e.g. , Gatlin-Johnson , ¶ 13 (explaining that the determination of whether a legal duty exists "is an issue of law for the court"); Massee , ¶ 27 (stating that the "existence of a legal duty is a matter of law to be determined by the court"). We turn now to the question of whether a legal duty is owed under common law principles of negligence to a person in the circumstances presented here, who alleges that he was directly injured by an officer's affirmative acts while the officer was engaged in his law-enforcement responsibilities.
¶ 23 The traditional, centuries-old, universally-recognized, common law rule is that we all share the duty to exercise the level of care that a ***321 reasonable and prudent person would under the same circumstances. Fisher , ¶ 16. See also , § 27-1-701, MCA ("[E]ach person is responsible ... for an injury occasioned to another by the person's want of ordinary care or skill in the management of the person's property or person...."); § 28-1-201, MCA ("Every person is bound, without contract, to abstain from injuring the person or property of another or infringing upon any of another person's rights."). Thus, a person has a duty to exercise the same level of care that a reasonable and prudent person would when placed in a position where, if he did not use such care, he would injure another's person or property. In determining whether a duty exists, courts consider "whether the imposition of that duty comports with public policy, and whether the defendant could have foreseen that his conduct could have resulted in an injury to the plaintiff." Fisher , ¶ 17.
¶ 24 Here, in considering whether imposing a duty comports with public policy, we need look no further than §§ 27-1-701 and 28-1-201, MCA. The Legislature codified public policy by expressly providing that "each person is responsible ... for an injury occasioned to another," § 27-1-701, MCA, and that "[e]very person is bound ... to abstain from injuring the person or property of another," § 28-1-201, MCA. These statutes, moreover, are consistent with well-established common law which requires that all individuals "use the degree of care that an ordinarily prudent person would have used under the same circumstance." Barr v. Great Falls Int'l Airport Auth. , 2005 MT 36, ¶ 41, 326 Mont. 93, 107, 107 P.3d 471. See also Fisher , ¶ 16, Massee , ¶ 30. Thus, it is abundantly clear that the Legislature already considered and determined that imposing a duty not to injure others comports with public policy. We repeatedly hold that we will not interpret a statute beyond its plain language if the language is clear and unambiguous. Mont. Sports Shooting Ass'n v. State , 2008 MT 190, ¶ 11, 344 Mont. 1, 185 P.3d 1003 ; State v. Letasky , 2007 MT 51, ¶ 11, 336 Mont. 178, 152 P.3d 1288 ("We interpret a statute first by looking to the statute's plain language, and if the language is clear and unambiguous, no further representation is required."). Here, the Legislature could not have provided clearer, more unambiguous language. No person, including a law-enforcement officer, is excepted from the statutory language. We conclude that the Legislature's express codification of that public policy requires that "each person is responsible not only for the results of the person's willful acts but also for an injury occasioned to another by the person's want of ordinary care...." Section 27-1-701, MCA. Public policy, as determined by the Legislature, our precedent, and general principles of negligence, supports finding that an individual, in this ***322 case an officer, owes a duty of care to a plaintiff directly injured by that individual's affirmative acts. It is unnecessary to further examine whether imposing a general duty of care comports with public policy. *310 ¶ 25 The existence of a legal duty also "turns primarily on foreseeability." Eklund , ¶ 40 (quoting Lopez , ¶ 27 ). Therefore, we ask whether the injured party was a foreseeable plaintiff-whether he "was within the scope of risk created by the alleged negligence of the tortfeasor." Eklund , ¶ 40 (citing Lopez , ¶ 28 ). While the question of duty is usually presented in terms of the actor's obligation, "the essential question [is] whether the plaintiff's interests are entitled to legal protection against the defendant's conduct." W.L. Prosser, Handbook of the Law of Torts 325 (4th ed. 1971). We explain foreseeability consistent with Judge Cardozo's description in Palsgraf v. Long Island Railroad Company , 248 N.Y. 339, 162 N.E. 99, 100 (1928) :
"The risk reasonably to be perceived defines the duty to be obeyed." [ Palsgraf , 162 N.E. at 100.] That is to say, a defendant owes a duty with respect to those risks or hazards whose likelihood made the conduct unreasonably dangerous, and hence negligent in the first instance.
Fisher , ¶ 21 (quoting Mang v. Eliasson , 153 Mont. 431, 437, 458 P.2d 777, 781 (1969) ). The question is "whether the defendant could have reasonably foreseen that his or her conduct could have resulted in an injury to the plaintiff." Fisher , ¶ 21 (quoting Hinkle v. Shepherd Sch. Dist. No. 37 , 2004 MT 175, ¶ 30, 322 Mont. 80, 93 P.3d 1239 ).
¶ 26 When examining the question of foreseeability, the court's role in resolving questions of law and the jury's role in resolving questions of fact are separate and distinct. The question of foreseeability, however, is germane to both roles: the court's in determining the presence or absence of a legal duty and the jury's in determining causation. The court first considers foreseeability to define the legal duty. The jury then considers foreseeability to determine whether the defendant's conduct caused the plaintiff's injury. Even though the existence of a legal duty is normally determined by the trial court and necessarily depends on the facts of a particular case, we may decide the issue, as it is a matter of law and the determinative facts in this case-Bassett's allegation that Lamantia's affirmative acts directly injured him-are not in dispute. Accordingly, we conclude that, under the circumstances presented, an officer owes a plaintiff a legal duty where a plaintiff claims that he was directly injured by the officer's affirmative acts.
¶ 27 Here, Bassett alleges that he was directly injured by Lamantia's affirmative acts. Lamantia's direct and affirmative acts ***323 establish the parameters of a legal duty that is independent of any findings the jury might make that Lamantia failed to exercise due care and caused Bassett's injury. Lamantia could have reasonably foreseen that his conduct-tackling someone to the ground-could have resulted in injury to that person. We conclude that Lamantia owed Bassett a legal duty, as Bassett was a foreseeable plaintiff directly injured by Lamantia's affirmative acts. Because we find that Lamantia owed Bassett a legal duty, the question becomes what duty is owed.
¶ 28 The standard of care prescribes how a person must act to satisfy the duty of care he owes to the plaintiff. We begin by noting the obvious: an officer does not stand in the same shoes as an ordinary citizen when pursuing a criminal suspect. Inherent in an officer's job responsibilities is a potential risk of injury to those he encounters. In certain professions, the standard of care is defined by determining what standard of care the reasonably prudent professional in that line of work would exercise. For example, a physician who is "a non-board-certified general practitioner is held to the standard of care of a reasonably competent general practitioner acting in the same or similar community in the United States in the same or similar circumstances." Chapel v. Allison , 241 Mont. 83, 92, 785 P.2d 204, 210 (1990). We have similarly defined the standard of care as necessitating considerations beyond the common experience and knowledge of ordinary citizens to dentists and orthodontists, Llera v. Wisner , 171 Mont. 254, 262, 557 P.2d 805, 810 (1976) ; manufacturers and distributors of pharmaceuticals, Hill v. Squibb & Sons , 181 Mont. 199, 206-07, 592 P.2d 1383, 1387-88 (1979) ; abstracters of title, Doble v. Lincoln Cnty. TitleCo ., 215 Mont. 1, 5, 692 P.2d 1267, 1270 (1985) ; and veterinarians, *311 Zimmerman v. Robertson , 259 Mont. 105, 108, 854 P.2d 338, 340 (1993). Upon a similar rationale, we conclude that a law-enforcement officer's actions should be judged by a standard of care which considers his profession and concomitant obligations.
¶ 29 We determine that law-enforcement officers owe a standard of care in cases where the plaintiff claims an officer breached a duty other than the general duty to protect and preserve the peace. Although the duty arises based on the plaintiff's claim that he was directly injured by the officer's affirmative acts, the standard of care an officer owes in that situation is the care that a reasonable officer with similar skill, training, and experience would exercise under the same or similar circumstances. Whether "similar circumstances" exist is a question for the trier of fact in determining whether the defendant breached the duty. See Chapel , 241 Mont. at 93, 785 P.2d at 210.
***324 ¶ 30 Accordingly, Lamantia owed Bassett a duty to exercise the care that a reasonable officer with similar skill, training, and experience would under the same or similar circumstances. Whether Lamantia departed from that standard of care and thus breached the duty he owed to Bassett, and whether his actions were the cause of Bassett's injuries, are questions of fact to be resolved by the fact finder at trial. See Gatlin-Johnson , ¶ 13 ; Lopez , ¶ 31.
CONCLUSION
¶ 31 We exercise our authority to reformulate the certified question as: Under Montana law, when a plaintiff claims he was injured directly by an officer's affirmative acts, does the public-duty doctrine exclude all duties that may arise pursuant to generally applicable principles of negligence? We answer that the public-duty doctrine does not exclude other applicable duties under the circumstances presented by the certified question. The public-duty doctrine is only applicable to the duty to protect and preserve the peace, and therefore not relevant where the plaintiff alleges he was directly injured by an officer's affirmative acts. The public-duty doctrine does not exclude other duties which might arise independently pursuant to generally applicable principles of negligence. Here, where Bassett alleges that he was directly injured by Lamantia's affirmative acts, Lamantia owed Bassett a legal duty to exercise the same care that a reasonable officer with similar skill, training, and experience would under the same or similar circumstances.
We concur:
MIKE McGRATH, C.J.
JAMES JEREMIAH SHEA, J.
BETH BAKER, J.
DIRK M. SANDEFUR, J.

When we refer to the duty to protect, this includes the duty to preserve the peace. See , e.g. , Nelson v. Driscoll , 1999 MT 193, ¶ 21, 295 Mont. 363, 983 P.2d 972 (noting a law-enforcement officer's "duty to protect and preserve the peace").

We confine our analysis and holding in this case to the facts giving rise to the certified question.

The scope of our analysis is limited to an answer of the reformulated certified question. See Frontline Processing Corp. v. Am. Econ. Ins. Co. , 2006 MT 344, ¶ 31, 335 Mont. 192, 149 P.3d 906. The Montana Trial Lawyers Association (MTLA); The Montana League of Cities and Towns, International Municipal Lawyers Association, and Montana Association of Counties; and The Montana County Attorneys Association, Montana Sheriffs and Peace Officers Association, Montana Police Protective Association, and Montana Association of Chiefs of Police filed briefs as amici curiae.
Some of the issues raised by the parties and amici curiae are beyond the scope of the reformulated certified question. For example, MTLA filed an amicus brief in support of Bassett, arguing that the public-duty doctrine is unconstitutional. Multiple Justices have questioned the constitutionality of the public-duty doctrine throughout the years-Justice Nelson notably and continually asserted that the doctrine frustrates Article II, Section 18 of the Montana Constitution. See , e.g. , Gonzales v. City of Bozeman , 2009 MT 277, ¶¶ 54-87, 352 Mont. 145, 217 P.3d 487 (Nelson, J., dissenting); Gonzales , ¶ 53 (Cotter, J., concurring in part and dissenting in part) (agreeing with "Justice Nelson that the question of the Public Duty Doctrine's continuing viability is open to challenge in the proper case"); Doris Nelson v. State , 2008 MT 336, ¶¶ 64-78, 346 Mont. 206, 195 P.3d 293 (Nelson, J., concurring in part and dissenting in part) (hereinafter Doris Nelson ); Prosser v. Kennedy Enters., Inc. , 2008 MT 87, ¶¶ 60-101, 342 Mont. 209, 179 P.3d 1178 (Nelson, J., dissenting); Massee v. Thompson , 2004 MT 121, ¶¶ 65-96, 321 Mont. 210, 90 P.3d 394 (Nelson, J., specially concurring in part and dissenting in part). However, amici curiae "are not parties and cannot assume the functions of parties, nor create, extend or enlarge issues." Reichert v. State , 2012 MT 111, ¶ 26, 365 Mont. 92, 278 P.3d 455 (citations omitted). Therefore, we only consider amici's arguments "insofar as they coincide with the issues raised by the parties to the action." Reichert , ¶ 26. Neither party raised the constitutionality of the public-duty doctrine, and we accordingly decline to consider that issue as we answer the reformulated certified question.

There are exceptions to the public-duty doctrine where a special relationship exists between a government entity or person and the injured plaintiff. Nelson , ¶ 22. The parties agree that no special relationship exists between Lamantia and Bassett.