FILED

11/04/2025

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 24-0554

DA 24-0554

IN THE SUPREME COURT OF THE STATE OF MONTANA

2025 MT 252

THE ESTATE OF RICHARD MABEE,

     Plaintiff and Appellant,

  v.

WHEATLAND COUNTY, WHEATLAND
COUNTY SHERIFF'S OFFICE,

     Defendants and Appellees.

APPEAL FROM:    District Court of the Fourteenth Judicial District,
                 In and For the County of Wheatland, Cause No. DV-22-01
                 Honorable Randal I. Spaulding, Presiding Judge

COUNSEL OF RECORD:

     For Appellant:

          Patrick F. Flaherty, Daniel J. Flaherty, Paul Gallardo, Flaherty Gallardo
          Lawyers, Great Falls, Montana

          Timothy M. Greene, Law Offices of Greene and Lloyd, PLLC, Puyallup,
          Washington

     For Appellees:

          Maureen H. Lennon, Mitchell A. Young, County Litigation Group, Helena,
          Montana

Submitted on Briefs:  August 27, 2025

Decided:  November 4, 2025

Filed:

_____
                         Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1     Richard Mabee died from a methamphetamine overdose during his confinement in the Wheatland County Jail.  Mabee's Estate brought a negligence action against Wheatland County, alleging that Mabee's jailers caused his death by failing to assist him during his overdose.  In response, the County asserted that Mabee's own negligence diminished or precluded the Estate's recovery.  The Estate argues that the District Court erred when it allowed the jury to consider Mabee's comparative negligence.  We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

¶2     In February 2019, Richard Mabee decided to make an impromptu trip from Washington to Harlowton, Montana, where he used to reside.  Mabee's friend agreed to drive and accompany him to Montana.  Mabee was on probation in Washington at the time, and he did not ask his probation officer for a travel permit prior to his departure.

¶3     On the evening of February 23, Deputy Gentile with the Wheatland County Sheriff's Office pulled Mabee's friend over because his vehicle had only one working headlight.  Mabee was a passenger in the vehicle.  Gentile contacted Sheriff Misner to provide backup during the traffic stop.  The officers discovered that Mabee was a probationer from Washington and that his presence in Montana likely violated his probation conditions.  Gentile detained Mabee, brought him back to the Sheriff's office for further questioning, and eventually arrested him for his violation.

¶4     During the booking process, Gentile noted on Mabee's intake forms that Mabee did not appear to be under the influence of drugs.  Gentile also remarked that he did not believe

that Mabee posed a medical, mental health, or suicide risk. Gentile strip-searched Mabee but did not perform a body cavity search. Gentile did not find any contraband in Mabee's possession. Mabee carried only his cell phone, a pair of gloves, and a condom at the time of booking. Sheriff Misner, who was acquainted with Mabee, testified that Mabee "looked good" at the time of his arrest, "some of the best I'd seen him."

¶5 Mabee settled into his cell just after midnight. The dispatch officer instructed Mabee to call out if he needed anything. Mabee's cell footage showed that a small object fell out of Mabee's pant leg and onto the floor just a few minutes later. Mabee promptly disposed of the object by flushing it down the toilet. Around 6:00 a.m., Mabee began exhibiting signs of methamphetamine intoxication: he was shaking, making sporadic movements, talking to himself, and reaching for nonexistent objects. Deputy Sweet, who also knew Mabee from his time in Harlowton, arrived at the jail around this time to begin her shift as the dispatching officer. Deputy Sweet visually monitored Mabee's welfare by observing his cell on the video monitor, but she did not enter the jail or his cell to interact with him. Deputy Sweet testified that she noticed Mabee's strange behavior, but she did not believe that Mabee was in danger because she had observed similar behavior from him in the past.

¶6 Just after 8:00 a.m., Deputy Sweet—a trained EMT—observed that Mabee was slumped on the floor and no longer moving. She entered his cell and attempted life-saving CPR, to no avail. The County transported Mabee to the hospital where medical professionals pronounced him dead. The coroner ruled that Mabee died from a

methamphetamine overdose. It is unclear where and when Mabee obtained the methamphetamine that caused his death. The County theorizes that Mabee concealed a condom containing methamphetamine in his rectum prior to his confinement, and the condom ruptured shortly after Mabee entered his cell. Though the Estate raised some speculation, there was no evidence that Mabee obtained methamphetamine within the jail.

¶7 On February 8, 2022, Richard Mabee's Estate sued the County for negligence, arguing that it failed to provide adequate medical care for Mabee and caused his death. The County contended that Mabee's own negligent actions barred or diminished the Estate's recovery. During the final pretrial conference, the Estate argued that the special relationship between a jailer and detainee barred the County from maintaining a comparative negligence defense. The court ordered the parties to present point briefs on this issue, and it orally ruled in favor of the County during the settlement of jury instructions. The Court approved the County's proposed special verdict form that directed the jury to apportion liability between the parties. The Court adopted the Estate's proposed instruction on a jailer's duty of care and gave the instruction in full.

¶8 The jury found that both parties acted negligently to cause Mabee's death. The jury, however, attributed 95% of fault to Mabee and just 5% to the County. The District Court entered judgment in favor of the County in September 2024, reasoning that the Estate was not entitled to damages because the jury attributed more than fifty percent of the fault to Mabee.

**STANDARDS OF REVIEW**

¶9 The district court's determination that a defendant is entitled to assert an affirmative defense is a legal conclusion that we review de novo. *State v. Lynch*, 2005 MT 337, ¶ 7, 330 Mont. 74, 125 P.3d 1148. We apply an abuse of discretion standard when reviewing whether the district court correctly instructed the jury. *Spotted Horse v. BNSF Ry. Co.*, 2015 MT 148, ¶ 16, 379 Mont. 314, 350 P.3d 52. Although the district court has broad discretion to formulate jury instructions, the instructions as a whole must "fully and fairly instruct the jury regarding the applicable law." *Spotted Horse*, ¶ 16 (quoting *Peterson v. St. Paul Fire & Marine Ins. Co.*, 2010 MT 187, ¶ 22, 357 Mont. 293, 239 P.3d 904). The court must "instruct the jury on every issue or theory finding support in the evidence, and this duty is discharged by giving instructions which accurately and correctly state" the applicable law. *State v. Erickson*, 2014 MT 304, ¶ 35, 377 Mont. 84, 338 P.3d 598. When analyzing whether the district court properly gave or refused a particular instruction, this Court considers the instructions in their entirety along with the evidence introduced at trial. *Spotted Horse*, ¶ 16 (citations omitted).[1] The party assigning error to a particular instruction must show prejudice to prevail. *Camen v. Glacier Eye Clinic, P.C.*, 2023 MT 174, ¶ 21, 413 Mont. 277, 539 P.3d 1062.

**DISCUSSION**

¶10 To succeed on a negligence claim, the plaintiff must establish that: (1) the defendant owed plaintiff a legal duty; (2) the defendant breached that duty; (3) the defendant's breach

---

[1] Mabee did not include a full trial transcript in the record on appeal but only the testimonies of Sheriff Misner and Deputy Sweet and the settlement of jury instructions on the fourth day of trial.

caused the plaintiff's harm; and (4) the plaintiff suffered damages. *Kostelecky v. Peas in a Pod LLC*, 2022 MT 195, ¶ 20, 410 Mont. 239, 518 P.3d 840. The plaintiff must prove all four elements by a preponderance of the evidence. *Kostelecky*, ¶ 20. The defendant may argue that the plaintiff's comparative negligence bars or diminishes their recovery. Section 27-1-702, MCA.

¶11 The Estate argues that the District Court erred in allowing the County to assert that Mabee's comparative negligence barred or diminished its recovery. The Estate claims that the doctrine of comparative negligence is inapplicable in cases involving a jailer-detainee relationship. The County rejects this argument as a mischaracterization of the law, arguing that this defense is appropriate except in special circumstances where the jailer knows that the detainee is at risk of harm.

**Jailer's Duty of Care**

¶12 A jailer owes a prisoner in his custody a duty "to keep the prisoner [safe] and free from harm, to render him medical aid when necessary, and to treat him humanely and refrain from oppressing him." *Pretty On Top v. Hardin*, 182 Mont. 311, 315, 597 P.2d 58, 60-61 (1979) (citation omitted). The jailer must exercise reasonable and ordinary care in fulfilling this duty. *Pretty On Top*, 182 Mont. at 315, 597 P.2d at 60. A jailer generally is not liable for injuries flowing from the prisoner's own intentional conduct. *Pretty On Top*, 182 Mont. at 316, 597 P.2d at 61 (citing *Lucas v. City of Long Beach*, 60 Cal. App. 3d 341, 349 (1976)).

¶13    "Special circumstances," however, elevate a jailer's duty of care. *Pretty On Top*, 182 Mont. at 317, 597 P.2d at 61.  Special circumstances arise when the jailer knows or should know that the prisoner is at risk of harm.  *Pretty On Top*, 182 Mont. at 317, 597 P.2d at 61-62.  The jailer then must exercise reasonable care to protect the prisoner from that particular, foreseeable harm.  *Pretty On Top*, 182 Mont. at 317, 57 P.2d at 61-62.  In *Pretty On Top,* for example, the prisoner died by suicide while detained in the Hardin City Jail.  *Pretty On Top*, 182 Mont. at 317, 597 P.2d at 62.  This Court concluded that special circumstances did not arise because nothing about the prisoner's medical history or behavior suggested that he was at risk of suicide.  *Pretty On Top*, 182 Mont. at 317-18, 597 P.2d at 62.  The jailer therefore was not liable for the prisoner's intentional suicide.  *Pretty On Top*, 182 Mont. at 318, 597 P.2d at 62.

¶14    Mabee's custodians owed him a duty to exercise reasonable and ordinary care to protect him from harm, render medical aid, and treat him humanely.  Absent special circumstances such as actual knowledge or reason to know of the risk, the County would not be liable for any harm that flowed from Mabee's intentional conduct.

**Comparative Negligence**

¶15    A plaintiff is contributorily negligent when the plaintiff's conduct contributes to their harm and "falls below the standard to which he is required to conform for his own protection."  *Giambra v. Kelsey,* 2007 MT 158, ¶ 44, 338 Mont. 19, 162 P.3d 134 (citing W. Page Keeton et al., *The Law of Torts*, § 65, at 451 (5th ed., West 1984)).  Comparative negligence "compares the conduct of the parties 'based on evidence and contributory

7

negligence, as established by reasonable and prudent person standards.'" *Giambra*, ¶ 44 (citations omitted). Under Montana's comparative negligence scheme, a plaintiff may not recover if the factfinder finds the plaintiff more than fifty percent negligent. Section 27-1-702, MCA; *Giambra*, ¶ 45. Even if the factfinder finds the plaintiff less than fifty percent negligent, the plaintiff may not recover damages for the percentage of fault attributed to them. Section 27-1-702, MCA. This standard encompasses the principle that every person has a duty to exercise ordinary care for their own safety.

¶16 The Estate argues that the doctrine of comparative negligence does not apply in a negligence action that stems from a jailer-detainee relationship because the detainee depends entirely on their custodian to secure medical care. The Estate insists that allowing this defense "would eviscerate the jailer's duty and incentivize inaction in situations where intervention is critical." The County responds that the doctrine of comparative negligence is applicable in cases such as this one where each party owes a separate, equal duty of care to the detainee.

¶17 The factfinder may compare a plaintiff's and defendant's negligence because each party owes a separate duty of reasonable care. *Bassett v. Lamantia*, 2018 MT 119, ¶ 23, 391 Mont. 309, 417 P.3d 299 ("[W]e all share a duty to exercise the level of care that a reasonable and prudent person would under the same circumstances."). In special cases, however, the defendant's duty of care is elevated above the plaintiff's duty to protect themselves, and the plaintiff's comparative negligence will not relieve the defendant from liability. *See Pretty On Top*, 182 Mont. at 317, 597 P.2d at 58 (explaining that when

8

"special circumstances" elevate the jailer's duty of care, the jailer's acts or omissions constitute the proximate cause of any harm that flows from the prisoner's own actions); *Sandborg v. Blue Earth Cnty.*, 615 N.W.2d 61, 64 (Minn. 2000) (citing Restatement (Second) of Torts § 452 cmt. d (Am. Law. Inst. 1965)).

¶18 The Estate claims that comparative negligence is absolutely foreclosed in a case involving a jailer-detainee relationship, but this argument is inconsistent with our decision in *Pretty On Top*. The general rule is that a jailer owes a detainee a duty of reasonable and ordinary care. *Pretty On Top*, 182 Mont. at 315, 597 P.2d at 60. When this general rule applies, the factfinder may weigh the parties' respective negligence because each owes an equal duty of care. *Bassett,* ¶ 23; *See also Peterson v. Eichhorn*, 2008 MT 250, ¶¶ 30-33, 344 Mont. 540, 189 P.3d 615. When the jailer knows or should know that the detainee is at risk of harm, however, the jailer's duty to act subordinates the detainee's duty to protect themselves. *Pretty On Top*, 182 Mont. at 317, 592 P.2d at 61-62. *See also Sandborg*, 615 S.W.2d at 64 ("The jailer-detainee relationship is an exceptional circumstance in which the duty to protect against a *known* possibility of self-inflicted harm transfers entirely to the jailer and comparing the fault of the detainee is therefore not appropriate." (emphasis added)). In other words, when "special circumstances" are present under the standards articulated in *Pretty On Top*, the detainee is absolved from liability for any harm that flows from their own negligence. *See Pretty On Top*, 182 Mont. at 317, 592 P.2d at 61-62 ("[O]nce the jailer knows or should know of the suicidal tendencies of a prisoner, a duty arises to provide reasonable care necessary to prevent the prisoner from committing

9

suicide. The rule applies whether the prisoner is mentally anguished, helplessly intoxicated, or temporarily insane because of conditions forced upon him by the jailer.").[2]

¶19 Under these standards, a jailer may assert a detainee's comparative negligence as a defense unless the jailer knew or should have known that the detainee was at risk of harm, even from his own negligent or intentional conduct. The District Court did not err when it permitted the County's comparative negligence defense.

**Instruction No. 11**

¶20 Whether a defendant breached a legal duty owed to the plaintiff is a question of fact that the factfinder must determine. *Bonilla v. Univ. of Mont.*, 2005 MT 183, ¶ 17, 328 Mont. 41, 116 P.3d 823. The Estate proposed an instruction that encompasses a jailer's duty of reasonable, ordinary care from *Pretty On Top*. The parties agreed to this instruction during the settlement of jury instructions, and the District Court gave it to the jury as Instruction No. 11. The instruction stated in full:

> A jailer owes a duty to the prisoner to keep him safe and to protect him from unnecessary harm. Reasonable and ordinary care must be exercised for the life and health of the prisoner. A sheriff owes a prisoner placed in his custody a duty to keep the prisoner [safe] and free from harm, to render him medical aid when necessary, and to treat him humanely and refrain from oppressing him. However, a jailer is not liable to a prisoner in his keeping for injuries resulting from the prisoner's own intentional conduct. Absent some possible special circumstances a jailer is under no duty to prevent the latter from

---

[2] The County acknowledges that the jury could not be asked to compare its negligence to Mabee's intentional conduct. It explains that Mabee's "likely insertion of a hastily wrapped package into his anal cavity may have been an intentional act, but the consequences were not." The jury thus was not asked to compare Mabee's intentional conduct with the County's actions or inactions, but to consider his negligence—particularly, by failing to notify anyone in the jail that he had concealed a large dose of methamphetamine within his body or to call for help when he knew the drug had started to affect him.

taking his own life. "Special circumstances" form the basis of virtually every decision involving a jailer's liability for a prisoner's acts of self-destruction.

¶21 The Estate did not propose any instruction that would have defined for the jury when "special circumstances" absolve the detainee of their own duty or how it should determine whether those circumstances arose in this case.[3] "We will not review the propriety of jury instructions where a party has failed to preserve these issues for appeal." *Vincent v. BNSF Ry. Co.*, 2010 MT 57, ¶ 22, 355 Mont. 348, 228 P.3d 1123 (concluding that because the plaintiff failed to propose proper instructions in the trial court, she could not argue on appeal that the instructions given were inadequate). Because the District Court was not presented with an argument or a proposed instruction to further explain "special circumstances," we conclude that the Estate failed to preserve this issue for appeal. We therefore do not determine whether the evidence could have supported a finding that such circumstances arose to absolve Mabee of liability and bar the County's comparative negligence defense.[4]

¶22 Moreover, we will reverse for an instructional error only if the error deprives a party of their substantial rights, thereby prejudicing them. *Camen*, ¶ 21. A party has a substantial right to instruct the jury on the important aspects of their theory of the case, so long as their

---

[3] The Estate's proposed Instruction No. 14 provided, "When there is good reason to believe that the inmates may be injured or endangered, the detention center administrator shall remove them to a safe and convenient place and confine them there as long as necessary to avoid the danger." The Estate withdrew this instruction at trial.

[4] We do not accept the County's argument that its duty to act became absolute only once it discovered that Mabee "had a potentially lethal dose of methamphetamine in his blood." The proper inquiry is whether the County knew or had reason to know that Mabee was at risk of harm. *Pretty On Top*, 182 Mont. at 317, 597 P.2d at 61-62.

11

theory is supported by credible evidence. *Camen*, ¶ 21. We will not find error if, considering the evidence in the record, the instructions in their entirety establish that the party challenging the instruction suffered no prejudice. *St. Paul Fire & Marine Ins. Co.*, ¶ 22.

¶23 At trial, the Estate presented evidence that the Wheatland County Jail's policies required officers to physically enter the jail and inspect inmates for signs of life once per hour. Deputy Sweet testified that she visually monitored Mabee's behavior from his cell footage but acknowledged that she violated this policy by not entering the cell area of the jail. Sweet also testified that she "was not concerned" when she observed Mabee's strange behavior on the video monitor because "[t]hese are behaviors we see often in the jail[,]" and she had seen similar behaviors from Mabee in the past. Sweet entered the booking room at approximately 7:00 a.m. after performing her morning chores and could hear Mabee pacing in his cell. Roughly one hour later, Sweet noticed that Mabee was no longer moving, entered his cell, and attempted life-saving CPR for approximately five minutes.

¶24 Along with instructions that described the parties' burdens of proof and the elements of negligence, the District Court gave the County's proposed instruction that, "*In the absence of a reason to think otherwise*, it is not negligent for a person to fail to anticipate an injury which can result only from another's failure to use reasonable care." (Emphasis added.). The Estate objected to this instruction on the ground that "[t]he reason to think otherwise is [Mabee's] incarceration." The District Court ruled that the instruction was appropriate because it related to the foreseeability of Mabee's harm "and whether the

12

authorities knew or reasonably should have known that he was in special need and therefore a special . . . circumstance." The District Court stated that whether Mabee was in "special need" was "a large part of the question that the jury ha[d] to answer here." This instruction, along with the District Court's comments, afforded the Estate ample notice and opportunity to argue that the County should have foreseen Mabee's harm.

¶25 The instructions given by the District Court, along with the evidence presented at trial, afforded the Estate the opportunity to argue its theory that Mabee was absolved from liability once the County knew or should have known that Mabee's life was in jeopardy. On the limited record and preserved arguments before us, we conclude that the Estate has not met its burden on appeal to demonstrate that the court committed reversible error when it failed to instruct the jury *sua sponte* that a jailer's duty of care becomes paramount once "special circumstances" are present.

## CONCLUSION

¶26 The District Court's judgment on the verdict is affirmed.

/S/ BETH BAKER

We Concur:

/S/ KATHERINE M. BIDEGARAY
/S/ LAURIE McKINNON
/S/ INGRID GUSTAFSON
/S/ JIM RICE

13